### LAEMMLE v. EISNER, Ex-Collector of Internal Revenue.

(District Court, S. D. New York. August 9, 1920.)

No. 20–103.

**Internal revenue ☜7—Attorney's fees paid in litigation for control of stock not a "necessary expense in carrying on business."**

Attorney's fees paid in litigation for control of certain stock, resulting in practically the ownership or control thereof and the consequent management of the company, *held* to have constituted a capital investment, and not a "necessary expense actually paid in carrying on any individual business," deductible from income derived from such business.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary Expenses.]

Action by Carl Laemmle against Mark Eisner, ex-Collector of Internal Revenue, etc. Verdict directed for defendant, and against plaintiff.

At the close of the plaintiff's case, defendant, without submitting any evidence, moved for the direction of a verdict in his favor. The facts disclosed by the evidence introduced in behalf of the plaintiff are substantially as follows:

The Universal Film Manufacturing Company was organized in 1912 with a capital stock of $2,000,000, consisting of 10,000 shares of preferred stock and 10,000 shares of common stock, of the par value of $100 each. On May 5, 1913, the plaintiff, in conjunction with a man named Swanson and others, controlled a majority of the stock of the company under a voting trust agreement, and the plaintiff was president of the company. On the above date one David Horsley was the owner of 1,250 shares of the preferred stock and 1,540 shares of the common stock of the Universal Film Manufacturing Company. On that day Horsley entered into an agreement with one Patrick Powers, a former stockholder of the company, who at that time had apparently disposed of all

---

his stock, whereby Powers for good and valuable consideration was given an option to purchase the stock held by Horsley for the sum of $167,400, to be paid $57,400 in cash and $110,000 in notes. The stock was deposited in escrow with the Bank of the Metropolis, and the option was to extend for a period of 30 days, and thereafter for three periods of 30 days each, provided it was not terminated by 10 days' notice in writing prior to the expiration of any one of these periods. No such notice was given prior to the happening of the events hereinafter set forth.

On the same day—May 5, 1913—a collateral agreement was executed between Horsley and Powers, wherein and whereby it was agreed that, if Powers purchased the Horsley stock for 60 per cent. of its par value, he should receive a brokerage fee of $5 a share, and furthermore that Powers should not exercise the option unless Laemmle, the plaintiff, refused to sell to Powers the stock held by him in the company. On June 7, 1913, while the option agreement was still apparently in effect, but before any formal exercise of the option on the part of Powers, the 1,250 shares of preferred stock deposited by Horsley under the agreement with the Bank of the Metropolis were transferred to the name of Powers on the books of the company. This transfer was made by Swanson, the vice president and secretary of the company, and Burton Garrett, the assistant secretary, apparently acting in collusion with Powers.

About this time, also, according to the testimony of the plaintiff, Swanson, in violation of his voting trust agreement, transferred his own stock to Powers, thereby depriving the plaintiff and his group of the control of the company. Instead of taking legal steps to restrain and remedy what the plaintiff characterizes as criminal action on the part of Swanson, plaintiff entered into negotiations with Horsley and induced him to sell him the stock covered by the option agreement with Powers for the sum of $172,475, of which $97,475 was to be paid in cash and $75,000 in notes. In the agreement of sale between the plaintiff and Horsley the option agreement with Powers was expressly referred to, and the plaintiff agreed to defend Horsley against any suit by Powers for breach of this agreement, and to pay any judgment which the latter might recover. This transaction took place the 11th day of June, 1913, and, according to the admissions of the plaintiff and the documentary evidence introduced, was had with full knowledge of the prior agreement between Horsley and Powers. The plaintiff's contention on this point is that he was advised and believed that the prior option agreement was void.

On June 13, 1913, Powers formally exercised the option, and, being unable to secure the stock, on July 24, 1913, brought suit against the plaintiff and the Universal Film Manufacturing Company to have himself declared the owner of the Horsley stock. The plaintiff, Laemmle, appeared by one George N. Sage; but, according to his testimony, the litigation was conducted mainly by Stanchfield & Levy. An answer was interposed in his behalf, and subsequently an amended complaint filed, to which Laemmle demurred. No trial was ever had, and subsequently, on December 30, 1914, a settlement was reached between Powers and Laemmle, whereby the Horsley stock was divided between them, and Laemmle retained control of the company and remained its president. The action was discontinued on January 15, 1915.

In the course of this litigation plaintiff, during the year 1914, paid to his attorneys, Stanchfield & Levy, the sum of $7,500 for their services therein. During the year 1915, plaintiff paid to these attorneys the sum of $51,700, likewise for their services in this action. These sums represent no services performed in any other action, and were paid solely for the defense and settlement of the action brought by Powers over the Horsley stock.

In making return of his income for the purposes of taxation for the years 1914 and 1915, plaintiff attempted to include the sums so paid as deductions from his gross income, under the heading: "The amount of necessary expenses actually paid within the calendar year, for which the return is made, in carrying on any individual business." After an audit of his returns by the internal revenue officials, these amounts were disallowed as deductions and additional taxes for these years assessed. After assessment of these additional taxes, plaintiff filed claims for abatement, which were rejected by the Commissioner of Internal Revenue. After such rejection the amount of the additional taxes, with interest and penalties, were paid by plaintiff, though not

under protest, and claims for refund filed. These claims were subsequently rejected by the Commissioner of Internal Revenue, and this action was brought to recover the amount of the additional taxes so assessed and collected.

Stanchfield & Levy and J. Morgan Sheen, all of New York City, for plaintiff.

Francis G. Caffey, U. S. Atty., of New York City (Richard S. Holmes, Asst. U. S. Atty., of New York City, of counsel), for defendant.

SHEPPARD, District Judge. After a full consideration of the facts of this case, I am constrained to the view that the sum of attorney's fees paid in the litigation for the mastery of the Horsley stock, resulting in practically the ownership or control thereof and the consequent management of the company, under the facts and circumstances disclosed by the record, constituted a capital investment, and not a "necessary expense actually paid in carrying on the business," deductible from income derived from such business. Therefore a verdict will be directed in favor of the defendant, and against the plaintiff.

Counsel will prepare form of judgment desired.