NEWARK MILK & CREAM CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14191.   Promulgated February 13, 1928.

*Lee I. Park, Esq.*, for the petitioner.
*Julian G. Gibbs, Esq.*, for the respondent.

684

OPINION.

SMITH: The only question for determination is whether the amounts paid by the petitioner during 1922 and 1923 upon its guaranty to the Bennett Estate are deductible from gross income. The petitioner contends that the amounts were paid as ordinary and necessary expenses of carrying on the business and are therefore deductible.

In the year 1921 the heirs of the Bennett Estate, who owned 50 per cent of the petitioner's stock, were out of accord with the business policies of the company and successfully opposed the carrying out of plans for improvements that were essential to the prosperity of the business if not to its existence. They had petitioned the court for an injunction to restrain the officers of the company from making certain improvements which it appears the company was required to make in compliance with existing regulatory laws. At the court's suggestion it was agreed by way of settlement that the Bennett heirs should sell out their stock to the other stockholders and drop the

litigation against the petitioner. The petitioner, as a party to the agreement, promised to pay the attorney's fees of the Bennett heirs arising out of the litigation and guaranteed the Bennett Estate a return of 8 per cent upon the $200,000 to be paid for the stock for a period of ten years. It was upon this guaranty that the amounts in dispute were paid out by the petitioner.

It is contended on the part of the petitioner that the guaranty was made specifically as a consideration for the discontinuance of the litigation and was therefore a necessary expense. We are unable to find in the agreement, which is fully set forth above, any specification that the guaranty was made solely as a consideration for the termination of the litigation. Neither can we infer as much from the agreement as a whole, in fact the contrary appears to be true. The terms and conditions of the guaranty are set forth in paragraph 3 of the agreement. Paragraph 6 states that—

Upon the payment of the sums mentioned in the foregoing paragraph, the parties of the third part agree to consent to the discontinuance of all litigations now pending in any of the Courts of the State of New Jersey, and involving the party of the first part, the parties of the second part or the Fidelity Union Trust Company, as executor and trustee under the Last Will and Testament of William H. Bennett, deceased, and the parties of the third part further agree to consent to the vacation of any restraint now imposed upon the party of the first part, its officers, directors of [sic] stockholders under any order or decree of the Court of Chancery of New Jersey. The parties also agree at said time to execute and deliver, each to the other, general releases releasing each other and all officers and directors of the Newark Milk & Cream Co. and Alderney Dairy Co. from all liabilities or responsibilities of any character whatsoever, except those of compliance with and performance of any obligation and duty arising out of the terms of this agreement.

Paragraph 5 states in part:

The parties agree that the said shares of stock shall be transferred to the party of the first part and the said sum of $200,000.00 referred to in the second paragraph of this agreement, shall be paid on the fifth day of January, 1922, at the office of McCarter & English, No. 765 Broad Street, Newark, New Jersey, at the hour of three o'clock in the afternoon.

The litigation pending at the time was a petition by the Bennett heirs for an injunction to restrain the officers of the corporation. Upon the sale of their stock the Bennett heirs had no basis for the continuance of the litigation. The amount paid to them was in consideration of the sale of their stock. Clearly there was no additional consideration necessary for the termination of the litigation, nor does the agreement show that any was given.

Looking at the agreement as a whole we must conclude that the guaranty was as much a consideration for the transfer of the stock as was the promise to pay the $200,000. The fact that the liability upon the one was assumed by the individual stockholders, and upon

690

the other by the corporation, does not distinguish them. It should be noted that the stock was closely held. Prior to the transfer of the Bennett Estate stock, George O. Scheerer and his brother, William Scheerer, parties of the second part to the agreement, held 123 of the 250 shares outstanding, and thereafter an additional 125 shares. It is to be further noted that by a promise set forth in paragraph 3 of the agreement William Scheerer gave his personal guaranty upon the obligation assumed by the corporation.

It was held in *Laemmle v. Eisner*, 275 Fed. 504, that amounts paid as attorney's fees in litigation for control of certain stock resulting in practically the ownership or control thereof were capital expenditures and were not deductible as ordinary and necessary expenses of carrying on a business. In *Earl M. Palmer*, 3 B. T. A. 403, we held that an amount paid in settlement of a dispute and litigation was a capital expenditure and not deductible from gross income. See also *Consolidated Mutual Oil Co.*, 2 B. T. A. 1067; *Vivian Harcourt*, 2 B. T. A. 940; *Harry E. Lutz*, 2 B. T. A. 484; and *John C. Moore Corporation*, 3 B. T. A. 430.

The distinction is clear between cases where amounts are paid out as a result of litigation or as a means of settling a dispute arising from ordinary business transactions and cases such as the instant one where the payments were made in order to gain control of a business.

Under the circumstances we are of the opinion that the amounts in controversy are not deductible from gross income.

*Judgment will be entered on 15 days' notice, under Rule 50.*