FRED WONG GUNN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5283–64.   Filed October 26, 1967.

*Stephen H. Kaufmann*, for petitioner.
*Sheldon M. Sisson*, for respondent.

44

OPINION

The parties have treated the two determinations in issue as constituting one issue, appraiser's fee of $500, and the court-awarded legal fee of $10,000. The question is whether these expenses are capital expenses to be offset against the long-term capital gain resulting from the sale in 1961 of the Pine Street property; or whether each expense is deductible either under section 162(a), as an ordinary business expense, or under section 212 as an ordinary nonbusiness expense in connection with income-producing property or the collection of income.

The petitioner had the burden of proof with respect to both items in issue. It is advisable to note at the outset the matter of the evidence in this case. This case was calendared and called for trial, but the parties elected not to call any witnesses; there was no testimony. The evidence consists of several exhibits and a very brief stipulation of, facts. Rule 31(b) of this Court's Rules of Practice indicates that the parties may, and should, "stipulate the evidence" to which they can agree. The written stipulation of facts submitted by the parties does not supply some details about the general facts which might serve to clarify the general issue. The parties appear to place considerable reliance upon several exhibits. The exhibits have been carefully and fully considered, but they, too, do not provide other factual details which also might serve to clarify the dispute between the parties regarding the question of Federal tax law presented, as the later discussion will demonstrate.

The following discussion relates to the question of the deductibility of the court-awarded legal fee received by Hodes. In general, the deductibility of legal expense depends upon the purpose for which the expense was incurred. *Lykes* v. *United States*, 343 U.S. 118. In some instances, it may be difficult to find and determine the purpose of the legal service for which the fee was paid.

We need to know, in this case, the purpose of Hodes' legal services. That problem underlies the dispute here. We do not know, in fact, all about the legal services Hodes rendered. He was not called to testify about them. But the petitioner and the respondent appear to be satisfied and agreed that the only relevant fact is that Hodes represented Fred in the legal action to have the property sold pursuant to a petition to partition the undivided interests in the realty.

We do know that Ann Gunn first obtained an interlocutory decree of divorce from Fred on January 15, 1960, and that her next step was to obtain distribution to herself of her 25-percent interest in the multiple unit apartment property. She had a right to do so. That property could not be physically partitioned and physically distributed to the coowners, but could be sold, and the sale proceeds then could be distributed to the respective coowners according to their respective inter-

ests therein. The appropriate procedure was followed by Ann, and the other coowners did not object. She instituted a court action, separate and apart from her divorce suit, for the sale of the Pine Street property through a court proceeding and a court-appointed referee. The legal proceeding is called an action to partition real property, and the court procedure in such action is to bring about a sale of the property with respect to which the coowner bringing the action desires to sever his interest from the interests of the other coowners. In her complaint, filed in the Superior Court, Ann petitioned the court to order a sale of the property; to make distribution of the proceeds among and to the coowners according to their respective interests; and to fix and award a reasonable fee to her attorney. That was the sum and substance of Ann's action in the Superior Court. The evidence relating to that court action consists of four exhibits, Ann's complaint, the return of the first proposed sale of the referee, and two court orders.

We know that Hodes represented Fred in this action; and that in this legal proceeding he made objection, for Fred, to the sale of the property at first proposed by the referee, namely, a proposed sale to Sinclair Louie for $402,600. Strictly speaking, as far as the evidence here shows, the legal services of Hodes were limited to the above matter. We know nothing about other legal services of Hodes, if any. There is no evidence to the effect that Hodes rendered any legal services to Fred in connection with the winding up of the affairs of the C & G Realty partnership, if any such services were required. As far as we know, no legal services of Hodes were required in ending the partnership that operated the apartment property.

In the matter of bringing about the eventual sale of the realty to a higher bidder, Feigenbaum, for $422,000, or $19,400 more than the first highest bid, the court took the necessary steps of reopening the bidding, and Gallagher, the court-appointed referee, handled the arrangements for receiving new bids and presenting the highest one to the court for approval. The evidence does not show or indicate that Hodes did anything on Fred's behalf with respect to the above matters. Respondent does not contend that Hodes did so, or that Hodes located the eventual buyer, or that Hodes' services were directly involved in the actual sale of the property. Respondent and petitioner both agree that the referee of the court handled the actual sale procedures.

Petitioner agrees that the court-awarded fee of the referee, $7,500, plus the recording fees and revenue stamps totaling $477, or $7,977, were expenses of the sale, which properly are to be offset, and were offset, against the capital gain realized from the sale.

Petitioner and respondent agree that the purpose of the legal action in which Hodes rendered services was to bring about the sale of the property and the distribution of the net proceeds among the coowners,

including Fred. Upon the evidence here, we must and do conclude that the above purpose was the *primary* purpose of the legal proceeding in the Superior Court.

The Pine Street property, a business property, was operated by a partnership. Those owning recorded interests therein were the members of the partnership. Prior to Ann's interlocutory decree of divorce, the only recorded owners of the property were Ann Gunn and Annie Chow, each being the recorded owner of a 50-percent interest. When the Superior Court, on January 15, 1960, adjudged and decreed that Ann's 50-percent interest was awarded one-half to her and one-half to Fred, each then owning a 25-percent interest, it appears that Fred became a member of the partnership; he shared in the earnings.

The only property of the partnership was the apartment realty, building, and a small amount of furnishings and fixtures in that property. The partnership was the beneficial owner of the property, and it filed partnership returns in which the income of the property was reported, and the depreciation and expenses were deducted. When the Pine Street property was sold in 1961, the remaining assets of the partnership (according to its final tax return) consisted only of about $1,980, in cash, and such accumulation of earnings as was on hand, but we do not know about those other details. There was not any dispute among the partners about the partnership or its dissolution. The final steps relating to the partnership were routine, simple matters.

Ann Gunn instituted the action to have a partition sale of the realty as an owner of record of "an undivided one-half interest," on May 23, 1960. At that time, the final decree of divorce from Fred had not been entered. The final decree was entered on March 2, 1961. It was not until July 14, 1961, that the Superior Court, in docket No. 500313, the partition proceeding, entered its order appointing the sole referee, Gallagher, and ordered the referee "to accomplish the sale." In that order, the court adjudged and decreed that the respective interests in the realty were vested in Annie Chow, 50 percent; Ann Gunn, 25 percent; and Fred Gunn, 25 percent. The court stated in this order that Annie Chow and Ann Gunn were the recorded coowners of the property; that they were the partners in C & G Realty Co.; and that they appeared in the proceeding in both their individual and partnership capacities. The court did not state that Fred Gunn was a copartner or that he appeared in that capacity. In this order the court also ordered that "upon the completion of the sale of the property and the payment of all proper charges and claims, counsel fees shall be determined by the * * * court and paid directly by the referee to the respective counsel appearing of record herein." The evident meaning of the above is that the referee was to pay the court-determined counsel fees out of the proceeds of the sale. In this order, the court did not mention a receiver for the partnership.

The court in its order of October 19, 1961 (which as far as we know was its final order), accepting the highest bid of $422,000, of Feigenbaum, and confirming the sale, fixed the fees to be paid by the referee, and ordered that the fees awarded were made liens upon the net proceeds of sale. The fees so awarded were 5 fees only, and for the first time, the court's orders (as far as we know) mentioned a "receiver," Argall. Apparently, at some prior time the court had appointed a receiver, and no doubt Argall served as the receiver of the Pine Street property during the partition–sale proceedings. The court-awarded fees were $7,500 to the referee, $3,500 to the receiver, and $10,000, each to the attorneys representing each of the three coowners ($30,000). The total fees were $41,000. We do not know what formula the court applied in fixing the fees, but they represented a little less than 10 percent of the gross sale price. The court ordered the referee to pay each legal fee out of each coowner's share of the net sale proceeds.

The court orders in evidence in this case do not refer to a dissolution of the C & G Realty partnership, and there are a minimum of references in them to the partnership. Upon the evidence here, we cannot conclude that the *primary* purpose of the partition and sale proceeding in the Superior Court was the dissolution of the partnership. The fact that the partnership was dissolved upon and after the sale of the Pine Street property seems to have been merely the result of the sale of its chief and only asset, the Pine Street property, and, therefore, such dissolution was merely ancillary and incidental to the sale. The partition and sale complaint filed by Ann did not petition the court to dissolve the partnership. Petitioner's argument relating to this matter is in the nature of mainly an effort toward an interpretation and construction of the partition-sale, court proceeding. That argument has been considered but it is entitled to receive little weight and it is of little relevance.

We turn now to the chief cases cited by the parties, namely, *Dwight A. Ward*, 20 T.C. 332, affd. 224 F. 2d 547 (C.A. 9, 1955) ; and *Munson v. McGinnes*, 283 F. 2d 333 (C.A. 3, 1960), certiorari denied 364 U.S. 880. Petitioner has cited additional authorities. All have been considered.

In *Dwight A. Ward*, the taxpayer, Ward, had been for many years a partner with his two brothers in a partnership, "Ward Refrigerator & Mfg. Co." Disputes arose between Ward and his brothers about the management of the business. Because of the disputes, the brothers filed a petition in the Superior Court of Los Angeles County for the dissolution of the partnership and the appointment of a receiver. The court appointed a receiver, ordered him to operate the business, and to sell the business upon application to the court. The sale was accomplished. Ward engaged the services of a lawyer, Parks, after the

filing of the suit to dissolve the partnership. In this Court, 20 T.C. 332, 341, we noted that Parks advised and represented Ward in respect to his interest in the partnership. Parks' services to Ward were extensive, varied, and not limited to legal matters. Ward wanted to purchase the two-thirds interests of his brothers, but if that were not possible, he wanted to sell his interest at a price approaching the value thereof, at the best price. Parks' efforts, and those of Seeley, caused W. C. Graham to make bids for the business at the receiver's sale, and enabled Ward to sell his interest in the property *at a greater profit.* Ward paid Parks $10,000 for all of his services.

In this Court, *Dwight A. Ward, supra* at 340–342, the taxpayer claimed that the entire fee paid to Ward, $10,000, was deductible as either a business expense under section 23(a)(1)(A), or as a nonbusiness expense under section 23(a)(2), 1939 Code. This Court found and concluded that Parks had rendered two types of services, and that it was proper to allocate the fee of $10,000 between them on a 60–40 basis, $6,000 for general services and $4,000 for services directly related to the sale of property; and we held that $6,000 was deductible as a business expense under section 23(a)(1)(A), but $4,000 was an expense of the sale and, therefore, was a capital expense to be offset against the amount received from the sale of a capital asset. The taxpayer appealed from this Court's conclusion that $4,000 of Parks' fee was a nondeductible capital expense, as well as from this Court's determination under a different issue. On appeal, this Court's determination was affirmed, in respect of the allocation of $4,000 of the fee (of $10,000) to the sale of a capital asset. *Ward* v. *Commissioner,* 224 F. 2d 547, 554–555. The Court of Appeals agreed that the $4,000 paid to Parks for part of his services "were, in effect, a capital expenditure to help the sale," citing *Shipp* v. *Commissioner,* 217 F. 2d 401 (C.A. 9, 1954); *Cobb* v. *Commissioner,* 173 F. 2d 711, 714 (C.A. 6, 1949); and *Lykes* v. *United States, supra.*

The petitioner cites this Court's part of the determination in *Dwight A. Ward,* 20 T.C. 332, 340, allowing a deduction of $6,000, part of Parks' fee, as authority for his claim that the court-awarded fee of Hodes, of $10,000, is deductible. Respondent cites the *Ward* case, also, as authority for his determination that the fee awarded to Hodes was a capital expense incurred in connection with the sale of a capital asset, which properly must be offset against the selling price. Respondent relies on the part of this Court's determination that $4,000 of Parks' fee was a capital expense, which determination was affirmed by the Court of Appeals for the Ninth Circuit. Petitioner's reliance upon part of this Court's determination in *Ward* brings into focus a question of fact in this case to which we again refer, as well as to some well-established general principles. The conflict between the peti-

tioner's and respondent's contentions here, about both the fee received by Hodes and the appraiser's fee, arises out of their different, respective views of the real nature of these fees.

In *Dwight A. Ward, supra* at 341, this Court said: "The proper tax treatment to be accorded a payment to an attorney cannot be determined merely from the fact that the payment was for legal services rendered. We need to know the purpose for the legal services." See *Lykes* v. *United States, supra*, where the Supreme Court said: "their deductibility [legal fees] turns wholly upon the nature of the activities to which they relate." It is well established that fees paid in connection with the acquisition or disposition of real or personal property (such as legal, accounting, and brokerage fees) ordinarily are capital expenditures which are either to be added to cost or offset against selling price in determining the gain or loss upon the ultimate disposition of the property. 4 A Mertens, Law of Federal Income Taxation, sec. 25.26, p. 134; *Earl M. Palmer*, 3 B.T.A. 403; *Newark Milk & Cream Co.*, 10 B.T.A. 683, 690; *Morgan Jones Estate*, 43 B.T.A. 691, affd. 127 F. 2d 231; and *Laemmle* v. *Eisner*, 275 F. 504. It is provided in section 1.212–1(n), Income Tax Regs., that "Capital expenditures are not allowable as * * * nonbusiness expenses."

Section 212 allows an individual to deduct the ordinary and necessary expenses paid for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. In *Cobb* v. *Commissioner, supra*, referring to section 23(a)(2), 1939 Code, the predecessor of section 212, 1954 Code, the court said: "The true criterion would seem to be that, to become deductible under the statute, the expense must be in *proximate relation* to the production or collection of income or to the care and conservation of property held to produce it." (Emphasis supplied.) That interpretation of section 23(a)(2) was approved by the Supreme Court in *Lykes* v. *United States, supra*. It is a question of fact whether an expense comes within section 212 (nonbusiness expense), or section 162(a) (business expense), or whether the expense is a nondeductible capital expense which is proximately related to the disposition of a capital asset. In *Bowers* v. *Lumpkin*, 140 F. 2d 927, 928 (C.A. 4, 1944), certiorari denied 322 U.S. 755, it was pointed out that the statute allowing the deduction of nonbusiness expense (section 212 and its predecessor) was not intended by the Congress to abrogate the settled rule the expenditures directly connected with the disposition of a capital asset constitute capital expenses. See also *James C. Coughlin*, 3 T.C. 420.

The issue in this case, whether the legal fee awarded by the court to Hodes and the appraiser's fee, are capital expenses, or deductible expenses under either section 162(a) or section 212, presents questions

of fact which must be decided on the basis of the facts of this case, with attention to basic principles. And since petitioner and respondent have adopted different views about the nature of the action instituted in the Superior Court by Ann Gunn, it also is necessary to determine the *primary purpose* of that legal proceeding, which, too, must be determined from the evidence in this case. See *Georgia Leary Neill*, 42 T.C. 793, 799; and *Industrial Aggregate Co.* v. *United States*, 284 F. 2d 639, 645 (C.A. 8, 1960), where the court said: "Practicality and substance are to be recognized. The test which appears to have been established is that of *primary purpose* [of the particular litigation]."

The court proceedings in which Hodes represented Fred Gunn, the petitioner, have been fully described in our findings, and have been discussed above, at the outset. The primary purpose of that legal proceeding can be determined from the complaint filed by Ann Gunn. As set forth in the findings, she petitioned the court to order a sale of the Pine Street property; her complaint was an action for a partition–sale of realty, and she instituted the action as the owner of record of an undivided one-half interest therein. Ann had obtained an interlocutory decree of divorce in another proceeding; the court there had held that the interest of the Gunns in the Pine Street property was community property; and the court there had awarded one-half of the 50-percent interest in the Pine Street property to Ann, and one-half to Fred. Ann, it is evident, wanted to reduce to her possession her undivided 25-percent interest in the Pine Street property, and to separate her interest from the interests of those who owned the other 75-percent interests, which she had a right to do under California law. *De Roulet* v. *Mitchel*, 70 C.A. 2d 120, 124; 160 P. 2d 574. In the partition–sale action, the parties thereto, and all of their counsel, stipulated that a physical partition of the property was impossible, that a sale of the property was necessary, and that all of the parties acquiesced in the sale. The court so found, and the court appointed a sole referee, Gallagher, "to accomplish the sale." The court found that there was a copartnership, C & G Realty Co., in which the sole partners "in and to the vestees [of the property] of record were Annie Kwock Chow and Ann Wong Gunn, and that they had appeared in both their individual and partnership capacities." Fred Gunn retained a lawyer, Hodes, to represent him in the partition–sale proceeding, and the evidence here establishes that Hodes' services were devoted solely and wholly to helping Fred obtain the best and highest amount for his interest in the property, i.e., Hodes' services consisted of successfully objecting to and resisting the first return of sale to the court by the referee, recommending a sale for $402,600, as a result of which the court did not accept that price but ordered the reopening of the bidding for new bids on the condition that the first bid must exceed the bid of

$402,600 by a minimum amount of $12,000, and the property finally was sold for $422,000.

The action instituted by Ann was not for a receivership of the partnership, C & G Realty; or for a partnership accounting; and her action was not caused by or the result of a dispute among the partners about the conduct of the partnership business. The facts in this case are markedly different from those in the proceeding in the Superior Court in *Dwight A. Ward, supra,* and with respect to this Court's allowance in the *Ward* case of a deduction of part of the attorneys' fees, $6,000, the *Ward* case is distinguishable from this case. In the *Ward* case, the attorney for the taxpayer, Parks, testified about the variety of services he had rendered. This Court found that Parks had rendered "general services" to the taxpayer which were different from other services related to obtaining a bidder for the partnership business that was sold. Parks' services were not limited to legal services. Upon the evidence, we found and concluded, in effect, that the larger proportion of Parks' services came within the area of ordinary and necessary business services to Ward; therefore, $6,000 of Parks' fee constituted an ordinary and necessary expense of Ward's business activities and was deductible under section 23(a)(1)(A), 1939 Code. In the instant case, the evidence does not support the same finding with respect to Hodes' services to Fred. Petitioner's reliance is misplaced on the determination in *Ward* that $6,000 of the lawyer's fee was not a capital expense but was a deductible business expense.

On the other hand, this Court's findings in *Ward* that $4,000 of the lawyer's fee, and that the fee of $5,000 of a broker and appraiser, Seeley, constituted nondeductible capital expenses support respondent's determinations here, relating to the appraiser's fee and Hodes' fee. See *Dwight A. Ward,* 20 T.C. 332, 342–343, where we said (p. 343): "The services of the attorney [for which a deduction of $6,000 was allowed] related also to partnership matters in general other than the sale, and an allocation of the attorney's fee to items other than the sale was proper. But in respect to Seeley's services, those services were directly attached only to the auction sale. Under these circumstances no allocation seems permissible. Respondent did not err in determining that Seeley's fee was an expense of the sale and, as such, is an offset against the selling price."

Since petitioner attempts to find an analogy of a receiver's sale to the referee's sale in the Ann Gunn proceeding, the following is noted: Pending the procedures of offering the property for sale, obtaining bids and concluding a contract of sale, it was necessary for the operations of the property, the collection of rents, and the payment of the expenses thereof to be carried on by the partnership, and for that purpose, the court appointed a receiver, Frank Argall. Eventually the court awarded $3,500 to Argall for his services as

receiver. That was an ordinary and necessary business expense of the partnership which was fully deductible. There is no issue in this case about that expenditure. The respondent did not disallow the partnership a business expense deduction for $3,500. The receiver, Argall, was not the individual who was to engage in obtaining a buyer for the property. The Pine Street property was not sold at a receiver's sale.

The court appointed Frank Gallagher to be the referee to advertise the property for sale, obtain bids, and report the highest bid to the court. The procedure was that the court would determine the amount of the highest bid and would then direct the sale of the Pine Street property to the highest bidder under court order. The referee was to engage in the matter of selling the property. The court awarded Gallagher a fee of $7,500 for his services. The total costs of the sale amounted to $7,977, consisting of $7,500 to Gallagher, and $477 for revenue stamps and recording fees. None of these expenses are in issue.

The evidence here does not establish that Hodes' services to Fred related to any matters handled by the court-appointed receiver, Argall; nor does it show what Argall did; and it must be assumed that what he did was a routine matter of looking after receipts, disbursements, and operations until the property was sold. C & G Realty may have employed customarily a management agent, anyway, as it deducted in its 1961 tax return a "Management Fee" of $500, which appears to be unrelated to Argall's services, as far as we know. Of course, the Superior Court had jurisdiction to appoint a receiver of the apartment business, pending the sale, but that was an ancillary matter in the primary action for a sale of the property. *Blodgett* v. *Haddock*, 212 P. 2d 26.

A receiver's fee for management services is an ordinary, deductible expense. Sec. 1.162–1(a), Income Tax Regs.

The local law providing a method for terminating joint interests in real property has no bearing upon the classification of the ensuing expenditures for Federal tax purposes, as either deductible expenses or capital expenses.

Petitioner cites *Otto C. Doering, Jr.*, 39 T.C. 647, affd. 335 F. 2d 738 (C.A. 2, 1964), but it is inapplicable here. The *Doering* case (p. 650) involved expenses (legal fees) which were found to be a cost of collecting sums due to the taxpayer under "a fully executed and enforceable contract"; the expenses were not incurred to effect a disposition of a capital asset. The court, in affirming this Court, observed (335 F. 2d at 741–742) that there is a distinction between the nature of a capital expense connected with the sale of a capital asset, and the nature of expenses of *collecting* a sum of money which of itself is a capital gain.

Conceptually, expenses of collecting income are not part of a capital transaction. The court emphasized that the word "income" in section 212(1) "is not to be given a wholly literal reading. If a taxpayer sells securities or other capital assets, section 212(1) does not permit him to deduct expenses of sale even though the sale produces a gain which constitutes 'gross income,' " See *Spangler* v. *Commissioner*, 323 F. 2d 913, 921, (C.A. 9, 1963), where the court noted that "Costs connected with the disposition of a capital asset are also capital expenditures to be added to the taxpayer's basis, or offset against the sales price, rather than expenses deductible from ordinary income." In *Spangler* the the court cited and followed the reasoning of *Munson* v. *McGinnes*, *supra*.

*Frank L. Newburger, Jr.*, 13 T.C. 232, cited by petitioner, is also inapplicable here; it does not relate to legal fees connected with the disposition of a capital asset.

The reasoning of *Munson* v. *McGinnes*, *supra*, applies to this case. In *Munson* there was litigation about sales of shares of stock in Williamsport Wire Rope Co. to Bethlehem Steel Co. Later, former Williamsport stockholders, including Munson, sued to have the sale reopened on the ground that Bethlehem had acquired the stock fraudulently. The court found that the sales of stock to and the acquisition of the Williamsport assets by Bethlehem had resulted from fraud. The court ordered the payment of an additional $6 million by Bethlehem to the Williamsport stockholders. Munson received out of the litigation an additional payment for the sale of the Williamsport stock, from which he realized additional capital gain. His share of the legal expense was for successfully asserting and litigating his claim with the other shareholders. In a subsequent tax case, the U.S. District Court, 178 F. Supp. 380, and the Court of Appeals for the Third Circuit in *Munson* v. *McGinnes*, *supra*, held that the legal fees of an attorney of a stockholder for services in opening up the matter of the sale of stock, where a receivership was involved, must be treated as capital expenditures, and cannot be treated as expenses incurred for the production or collection of income, or as a business expense, under section 162 or section 212(1), 1954 Code. In *Munson* the court held (p. 336), in denying a deduction from ordinary income, "that in those situations where the capitalization of business selling expenses is a long established and accepted requirement, despite Section 162, equivalent or closely analogous nonbusiness expense must also be capitalized and used only as an offset to capital gain, despite Section 212(1)."

Our finding and conclusion are, and must be upon the evidence in this case, that the services of Hodes were *solely* in connection with the disposition of a capital asset. Apparently he earned his fee by convincing the court to reject the offer of $402,600, cash, and in this way he safeguarded Fred's one-fourth interest which was worth in

excess of $100,000. Hodes' services were directly connected with the sale of property in which Fred had an interest for which Fred wanted to obtain the highest market price obtainable. As the result of Hodes' services in the court proceedings for the sale of the property by the court-appointed referee, the property was sold at a higher price, $19,400 more than was originally offered. The court-awarded legal fee to Hodes was an expense directly connected with the sale of the property. It was a capital expense to be offset against the sales price. Respondent's determinations are sustained with respect to both the disallowance of deductions of the appraiser's fee of $500, and the legal fee of $10,000. In the absence of evidence to the contrary, it must be assumed that the appraiser's fee was incurred for an appraisal of the property in connection with the sale thereof; therefore this expense was directly connected with the sale and is a capital expense to be offset against the sales price. No facts were stipulated about this fee and there is no evidence relating to it.

A Rule 50 computation is necessary because of respondent's concession of a deduction for depreciation in the year of the sale.

*Decision will be entered under Rule 50.*