James A. Boyajian and Eleanor L. Boyajian v. Commissioner.
Boyajian v. Commissioner
Docket No. 1316-68.
United States Tax Court
T.C. Memo 1970-78; 1970 Tax Ct. Memo LEXIS 283; 29 T.C.M. (CCH) 363; T.C.M. (RIA) 70078; March 31, 1970, Filed David V. Anthony and Donald C. Holmes, Jr., 1625 K. St., N.W.,Washington, D.C., for the petitioners. Ernest J. Wright, for the respondent. SCOTT Memorandum Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal *284 income taxes for the calendar years 1963 and 1964 in the amounts of $798.60 and $531.73, respectively. Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for our decision the following: (1) Whether amounts paid by petitioners in 1963 and 1964 for legal fees are deductible in whole or in part under section 212 of the Internal Revenue Code of 1954[1] as expenses for the production of income or for the management, conservation or maintenance of property held for the production of income or constitute capital expenditures. (2) Whether petitioners are entitled to deduct as a business expense one-third of the estimated fair rental value of a home owned by them of which one-third was devoted to business use or should the deductible business expense be limited to one-third of the yearly depreciation and operating expenses of the house. All of the facts are stipulated and are found accordingly. Since the stipulated facts are not lengthy we will quote those portions necessary to an understanding of the issues herein except the facts contained in *285 the exhibits incorporated in the stipulation which facts will be summarized in footnotes to the quoted portions of the stipulated facts. 1. At the time the petition in this case was filed in this Court, the petitioners, James A. Boyajian and Eleanr L. Boyajian were husband and wife and were residing at 20 Dover Street, Golf, Illinois. 2. The petitioners' joint federal income tax returns for the taxable years ending December 31, 1963, and December 31, 1964, were timely filed with the District Director for the District of Chicago, Illinois. * * * 3. The petitioner, James A. Boyajian, was the president, principal stockholder, and substantial creditor of Triumph Manufacturing Co., hereinafter referred to as Triumph. 4. Triumph, among other things, was engaged in defense production work for the United States Air Force. 5. Triumph entered into a V-loan agreement on September 20, 1956, with the First National Bank of Chicago, referred to hereinafter as the "First National," under which the Federal Reserve Bank of Chicago as Fiscal Agent of the United States guaranteed the said First National against any loss. Pursuant to said agreement the sum of $190,000 was advanced to Triumph. *286 As collateral security for said V-loan, Triumph assigned the proceeds of the subject contracts to the First National. In addition, the petitioners personally guaranteed the indebtedness and gave additional collateral security in the form of mortgages covering 12 acres of undeveloped real estate (which did not produce current income, but which the petitioners held for investment purposes) and personal property to the First National under date of March 22, 1957. 6. Triumph was adjudicated a bankrupt on or about July 31, 1958, by the Bankruptcy Court of the United States District Court for the Northern District of Illinois. 7. Pursuant to an order dated March 16, 1960, of the Bankruptcy Court of the U.S. District Court for the Northern District of Illinois, Eastern Division, the Trustee in Bankruptcy for Triumph Manufacturing Co., bankrupt, sold and assigned to the petitioner, James A. Boyajian, certain alleged breach of contract claims against the United States of the Triumph Manufacturing Co. The United States Government had unsuccessfully challenged the validity of this assignment in the United States District Court. * * * [2]
*287 8. Upon Triumph's default on its V-loan payments to the First National, the First National was completely reimbursed by the Federal Reserve Bank, and all of the collateral in the name of the First National was reassigned to the Federal Reserve Bank as agent for the United States Air Force. 9. The Federal Reserve Bank as agent for the United States Air Force sent letters on January 11, 1960 and June 5, 1963, demanding full payment of the V-loan indebtedness including notes covering advances made for the preservation of collateral and accrued interest. Both 365 letters stated that if payments were not received within the specified time limits, rights accruing to the United States under the V-loan Agreement Guarantee would be availed of. 10. Petitioner, James A. Boyajian, retained the law firm of Dimond and Thorman for the purpose of prosecuting the alleged breach of contract claims referred to in paragraph 7 above, and also to protect his interest in his land used as collateral for the V-loan described in paragraph 5 above. For these services the petitioner, James A. Boyajian, paid the Estate of Solomon Dimond $1,000.00 on May 13, 1964. 11. Suit was filed on the said breach *288 of contract claims against the United States in the United States Court of Claims on July 1, 1960. The title of that action is James A. Boyajian, Assignee of Triumph Manufacturing Co., Plaintiff v. The United States, No. 261-60. The Court of Claims has not rendered a decision in that proceeding. * * * [3]
*289 12. In regard to the land used as collateral for the V-loan, Mr. Dimond negotiated with the Federal Reserve Bank, the Department of the Air Force and the Justice Department to delay a foreclosure sale under the guaranty terms of the V-loan. 13. Mr. Solomon Dimond died in 1963 and Mr. Jack Repan continued Mr. Dimond's practice. Mr. Repan performed services for petitioner in continuing the Court of Claims litigation in Docket No. 261-60 after Mr. Dimond's death. On May 13, 1964, petitioner paid Mr. Repan $500.00 for these services. [4]
14. The petitioner paid the law firm of Leonard M. Cohen and Melvin Cohen $800.00 in 1963 and $750.00 in 1964. Approximately $250.00 of these fees was chargeable to corporate and other problems, and $1,300.00 was chargeable to services in connection with the Court of Claims suit. Petitioners concede that they are not entitled to a deduction for the $250.00 chargeable to corporate and other problems. [5]
15. The Cohen and *290 Cohen law firm was involved in the Court of Claims suit to the following extent. It was concerned with the protection of Mr. Boyajian's interest in the 12 acres of undeveloped real estate which had been collateralized to secure the V-loan guaranteed by the petitioners and which the Air Force through its fiscal agent, the Federal Reserve Bank, was threatening to sell. In cooperation with Mr. Dimond, and later with Mr. Anthony, petitioners' counsel in this case, the Cohen firm explored the jurisdiction of the Court of Claims to restrain such sale while the suit was pending, and negotiated with the Air Force and Federal Reserve Bank to delay the sale. They also negotiated with Nova-Chrome, Inc. to clear the property of other claimed interests. The Cohen and Cohen law firm did not prepare or file any pleadings in the Court of Claims action referred to in paragraph 10 above, nor did they represent the petitioner before the Court of Claims. 366 16. Among other things, a purpose in delaying the judicial foreclosure of the petitioners' undeveloped real estate used as collateral for the V-loan was to insure that the petitioners would not suffer irreparable damage which might result from *291 a quick, forced sale. The petitioners wanted the Federal Reserve Bank to forbear foreclosure action until the property was otherwise sold or until the Court of Claims litigation was concluded. 17. Efforts made on the petitioners' behalf to forestall the foreclosure of petitioners' undeveloped real estate used as collateral for the V-loan were successful. Petitioners sold the land in 1968 for $175,000 which was used to liquidate in part petitioners' principal indebtedness and the claimed interest indebtedness on the V-loan discussed in paragraph 5 above. 18. The petitioners took a $1,200.00 business expense deduction on each of their 1963 and 1964 joint federal income tax returns as representing the alleged fair rental value of the portion of their home used an office and laboratory for Mr. Boyajian's business purposes. The respondent's statutory notice of deficiency for 1963 and 1964 disallowed $677.06 in each year. Respondent computed the amount of the allowable deduction using figures that were supplied to the revenue agent by the petitioners. Respondent's computation of the amount of the allowable and unallowable deduction is as follows: * * *
Allowable Depreciation Expense (33 i/3% of $1,000)
$333.33 * * *
Allowable utilities expense (33 i/3% of $568.83) $189.61
Allowable home office expense deduction
522.94
Amount deducted on 1963 and on 1964 income tax returns 1,200.00
Amount of deduction disallowed in 1963 and 1964 $677.06
*292 Petitioners on their income tax return for the calendar year 1963 deducted the $800 legal fee paid to Leonard and Melvin Cohen and on their income tax return for the calendar year 1964 deducted under the designation, "Attorney Fees," the amount of $2,350. [6]
Respondent in his notice of deficiency disallowed these claimed deductions with the explanation that petitioners had not established that they are entitled to the deductions. Petitioners contend that $1,300 of the fees paid to Cohen and Cohen and the entire $1,000 fee paid to the estate of Solomon Dimond are deductible under section 212 as expenses of the production or collection of income or for the management, conservation or maintenance of property held for the production of income. Respondent takes the position that all of the *293 $1,300 of fees paid to Cohen and Cohen are capital expenditures either for protection of petitioners' title to property or as part of the selling costs of a capital asset and that there is no evidence in the record from which it can be ascertained what portion of the $1,000 paid to the estate of Solomon Dimond was for services in the prosecution of the suit in the Court of Claims as distinguished from services in protecting petitioner's title to property or facilitating sale of the property at an increased price. Respondent takes the position that since the portion of the $1,000 payment which is a deductible expense cannot be determined from the record, the entire payment should be treated as a capital expenditure. Petitioner's basic proposition is that there is such an interrelationship between petitioner's actions in the Court of Claims and the Government's asserted right to foreclose on the collateral of undeveloped real estate that in fact the two cannot be separated and must be considered as one proceeding consisting of claims arising from the rights assigned to petitioner in connection with Triumph's Government contracts. Petitioners argue that the "legal fees incurred for *294 the negotiation which successfully prevented an untimely foreclosure of the petitioner's real property was necessary and incidental to the main purpose of petitioner's incurring of legal expenses: The recovery of a judgment against the United States for its alleged breach of contract." In our view petitioner's effort to forestall foreclosure on his real estate is not so interrelated to petitioner's suit in the Court of 367 Claims as to be inseparable nor was the foreclosure delay necessary or incidental to the Court of Claims suit. In the pleadings in the Court of Claims suit no mention is made of forestalling the foreclosure of petitioner's undeveloped real estate but in the prayer request is made for cancellation of the mortgage on petitioner's real property. Whether foreclosure could be forestalled had no effect on petitioner's rights in his Court of Claims suit. Even if petitioner had not purchased Triumph's claims against the Government in connection with the five contracts, he would still have sought to delay the foreclosure on his real estate in order to be enabled to obtain the best possible price for the property. If a delay in selling the property had not been in his *295 best interest petitioner would still have pursued his suit in the Court of Claims Petitioners specifically contend that the principal purpose in delaying the foreclosure sale was to realize the highest price possible for the property. [7] The primary purpose of the suit in the Court of Claims was to secure a judgment awarding a money judgment to petitioner. Not only are the purposes of the services of the attorneys in connection with forestalling foreclosure on the real estate and the services of the attorney in prosecuting the Court of Claims suit different but the actions taken by the attorneys were separate and independant. The effort to forestall foreclosure of petitioner's undeveloped real property was negotiated with the Department of Air Force, the Federal Reserve Bank of Chicago, and the Justice Department. Petitioner *296 employed the services of Cohen and Cohen solely to seek to forestall the foreclosure by every way possible. Cohen and Cohen's services were used to protect petitioner's interest in the 12 acres of undeveloped real estate by exploring the jurisdiction of the Court of Claims to restrain the sale while a suit was pending, and by negotiating with the Air Force and Federal Reserve Bank to delay the sale. Cohen and Cohen also negotiated to clear the property of other claimed interests. The firm did not prepare or file any pleadings in the Court of Claims action nor did they represent petitioner before that Court. We conclude that the services of Cohen and Cohen were entirely for the purpose of enabling petitioner to obtain and retain clear title to his real property until he could negotiate the most favorable sales price for it. Services of this type are closely related to the retention of title to property. Ordinarily amounts paid for such services are capital expenditures to be added to a taxpayer's basis in his property and recovered as a part of such basis when the property is sold. However, petitioners in the instant case argue that under the facts here present the amounts paid to *297 Cohen and Cohen should not be viewed as capital expenditures since because of the threatened foreclosure the expenditures were for the "conservation" of their real property and therefore a deductible expense under section 212. We cannot accept petitioner's contention for in the context of section 212 conservation of property seems to refer to operations performed with respect to the property itself, such as safeguarding or upkeep, rather than a taxpayer's retention of ownership in it. United States v. Gilmore, 372 U.S. 39, 44 (1963). To the extent the legal fees paid by petitioner to Cohen and Cohen were in any way for the "protection" of the real property, they were for protection of petitioner's title to that property. To the extent the fees were paid for any other purpose, they were for enabling petitioner to obtain the optimum sales price for the property. Petitioner cites Allied Chemical Corporation v. United States, 305 F. 2d 433 (Ct. Cls., 1962) to support their contention that expenses incurred to forestall foreclosure and sale of their real property *298 until a more advantageous time are deductible under sections 162 and 212. Allied Chemical Corporation v. United States, supra, is completely distinguishable on its facts from the instant case. The Court in that case held that Allied Chemical Corporation was a holding company, the business of which was holding stock in other companies. The Court concluded that amounts expended as legal fees by Allied Chemical Corporation to protect and enhance the value of its holdings were spent in the ordinary course of its trade or business and therefore were deductible as ordinary and necessary business expenses. (Sec. 162) The property owned by petitioner in the instant case was held for investment. Petitioners were not in the business of 368 holding property and therefore no expenses with respect to the property are deductible under section 162. We must, therefore, determine whether the expenditures were for the production of income or were in the nature of expenses of selling a capital asset at an advantageous price, a type of capital expenditure. As the Court pointed out in Spangler v. Commissioner, 323 F. 2d 913, 918 (C.A. 9, 1963), affirming a Memorandum *299 Opinion of this Court: The non-deductibility of capital expenditures, founded upon the principle that related disbursements and receipts should be given consistent tax treatment, is also a basic limitation upon Section 23(a)(1)(A), and the same limitation must therefore apply to Section 23(a)(2). Thus, capital expenditures are not deductible as ordinary and necessary expenses whether incurred in connection with a trade or business or in collection of income or conservation of property held for the production of income. * * * In Fred Wong Gunn, 49 T.C. 38 (1967), we held that attorneys' fees paid for the purpose of obtaining a more advantageous price for property were directly connected with the sale of the property and therefore were not deductible under section 212 but were capital expenditures to be offset against the sales price of the property in computing the capital gain from the sale. We therefore sustain respondent's disallowance of petitioner's claimed deductions for attorneys' *300 fees paid to Cohen and Cohen in 1963 and 1964. The evidence shows that the $1,000 fee paid to the estate of Solomon Dimond in 1964 was for the purpose of "prosecuting the alleged breach of contract claims" in the Court of Claims suit and "also to protect [petitioner's] interest in his land." Respondent does not contend that these fees are not deductible expenses to the extent that they were paid for services in connection with the Court of Claims suit but contends only that petitioner has failed to establish any reasonable basis for allocation of the amount paid and for this reason the total claimed deduction should be disallowed. We do not agree with respondent. In Dwight A. Ward, 20 T.C. 332, 341-342 (1953), affd. 224 F. 2d 547 (C.A. 9, 1955), we allocated an attorneys' fee between the deductible portion which was paid for services in connection with a partnership business and the portion which we held to represent a capital expenditure because it was paid to assist the taxpayer in obtaining a more beneficial price for property which was a capital asset on less precise evidence than that in the record in the instant case. In the instant case the record *301 shows that prior to his death Solomon Dimond was the only attorney prosecuting the Court of Claims case on behalf of petitioner, whereas Cohen and Cohen were devoting their services to petitioner exclusively to forestalling foreclosure on petitioner's property so as to enable petitioner to sell the property at a more advantageous price. The record shows the documents filed by Dimond in the Court of Claims case and also the money amount of the claims in that case. The fair inference from the record is that by far the major portion of Dimond's services were in connection with the Court of Claims case. Even weighing heavily against petitioner for any lack of preciseness in the record, we conclude that $750 of the $1,000 fee paid to Dimond's estate is a deductible expense paid in connection with prosecution of the suit in the Court of Claims and the other $250 is a capital expenditure paid in connection with the forestalling of foreclosure on the real property. Our final issue is whether petitioners are entitled to deduct as a business expense each year one-third of the fair rental value of their home. The parties agree that one-third of the home was used by petitioner in his trade *302 or business. They also agree as to the amount of the actual expense of maintaining the home. [8]
Section 162(a)(3) entitled, "Trade or Business Expense" provides in part: 369 (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (3) rentals or other payments *303 required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. A mere reading of this statute demonstrates that petitioners are not entitled to the deduction for "rent" which they claim. In the first place petitioners made no "rental" or "other payments" for use of the house they owned except to the extent of the operating expenses of the house, onethird of which amounts respondent has allowed as a deduction. In the second place the stipulated facts show that petitioner had title to the house and had an equity in the house. Petitioners' argument is to the effect that they would have received a personal benefit equivalent to $1,200 a year had they used their entire house for personal purposes and therefore they had in effect foregone a benefit which is comparable to income in order to use the space for business purposes. The short answer is that petitioners have neither "paid out" the $1,200 or if it is viewed as foregoing income included the so-called "foregone income" in their reported income. We sustain respondent in his partial disallowance *304 of the "rental" deductions claimed by petitioners and hold that his computation of the properly allowable deduction is correct. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. The copy of the assignment attached designates by numbers the five contracts with respect to which all claims against the United States were assigned by the Trustee in Bankruptcy for Triumph to petitioners.↩
3. Petitioner's petition in the Court of Claims case filed by his attorney, Solomon Dimond, is attached to the stipulation of facts as exhibit 4-D. It consists of 8 pages and alleges 6 causes of action against the United States, the defendant. Five of these causes of action are based on various alleged improper actions by various officers or employees of the United States in connection with the performance by Triumph of the 5 contracts which were listed in the assignment by the Trustee in Bankruptcy of Triumph to petitioner. The sixth cause of action alleged that because of the failure of the Government to make timely payment to Triumph that company had been unable to pay its V-Loan resulting in interest charges and the taking of possession of certain of petitioner's property given as security for that loan. The loss claimed by petitioner under cause of action Number Six was $100,000 and the total claimed under the first 5 causes of action was $408,403.42, making a total claimed by petitioner against the Government of $508,403.42 with respect to all 6 causes of action. In addition to the claim for $508,403.42, the prayer for relief asked that the mortgage on petitioner's real estate be cancelled. Exhibit 5-E attached to the stipulation of facts is "Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Reply Brief" filed in the Court of Claims case by petitioner's attorney, Solomon Dimond. Petitioner's opposition to the Government's motion for summary judgment was based upon his contention that "there are genuine issues of material fact as to each of plaintiff's six causes of action." The brief consisted of 24 pages plus 2 attached exhibits, 1 of which was an affidavit of petitioners consisting of 4 pages and the other a 2-page letter. The argument in the brief was directed to contentions that the Government's argument with respect to the various causes of action to the effect that the Plaintiff's claims were barred because of failure to protest decisions of the Project Engineer or to pursue available administrative remedies and for various other alleged grounds is not meritorious. The brief referred to 42 cases or rulings some of which were discussed in some detail. Exhibit 6-F attached to the stipulation is the "Commissioner's Order Re Trial Proceedings" filed in the Court of Claims case on July 15, 1966. This order recited that "By order of the Court dated October 30, 1964 (after oral argument), the Court sustained defendant's motion as to the fifth cause of action" and denied the motion without prejudice as to the remaining causes and returned the case to the trial commissioner. The order consisting of 9 pages outlined the various issues which were for trial.↩
4. Respondent in his brief conceded that petitioner was entitled to deduct this $500 payment.↩
5. Petitioner in the stipulation conceded that the $250 chargeable to corporate and other problems was not deductible by him.↩
6. The record does not show whether the $250 that petitioners concede is not deductible is part of the $750 paid to Cohen and Cohen in 1964 and apparently included in this total or is part of the $800 payment in 1963. The extra $100 not explained in the portions of the stipulation we have quoted was paid to a third law firm and petitioners have conceded that this $100 is not deductible.↩
7. Petitioners' brief, page 10. "Petitioners had no concern with who eventually took the right or title to the property. They were only interested in the income appreciation to be derived therefrom. Petitioners had no concern whether the Government foreclosed on the property or whether it did not, so long as income production was maximized through the sale."↩
8. Petitioners requested that the fair rental value of the portion of their home used for petitioner's business be allowed as a deduction under sec. 162 or sec. 212. Sec. 162 is for deductions relating to a trade or business, but sec. 212 relates to nonbusiness expenses. The parties stipulated: "The petitioners took a $1,200.00 business expense deduction on each of their 1963 and 1964 joint federal income tax returns as representing the alleged fair rental value of the portion of their home used as an office and laboratory for Mr. Boyajian's business purpose * * *" (underscoring supplied.) Since the parties stipulated that the expense was a business expense sec. 212↩ does not apply.