COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

Otto C. DOERING, Jr., and Lucy T.
Doering, Respondents.

No. 182, Docket 28322.

United States Court of Appeals
Second Circuit.

Argued April 14, 1964.

Decided June 30, 1964.

Hays, Circuit Judge, dissented.

Michael I. Smith, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., John B. Jones, Jr., Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C.), for petitioner.

John E. Tobin, New York City (Donovan, Leisure, Newton & Irvine, John C. Baity, Martin M. Spiegel, New York City, of counsel), for respondents.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

The Commissioner of Internal Revenue invites us to reverse a decision of the full Tax Court, 39 T.C. 647 (1963), permitting the taxpayer to deduct $6,760 of legal fees and related expenses as an ordinary and necessary expense paid or incurred "for the production or collection of income" under § 212(1) of the Inter-

nal Revenue Code of 1954. We must decline the invitation.

The taxpayer, Otto C. Doering, Jr., had long owned stock, ultimately 20%, of Argosy Pictures Corporation, which was engaged in producing motion pictures. In 1950 Argosy contracted with Republic Pictures Corporation for the latter to distribute and exhibit three pictures which Argosy was to produce; Argosy was to receive a specified portion of Republic's profits from distribution and exhibition. Argosy completed the pictures by the end of 1952. A dispute as to the amount payable by Republic shortly ensued. Over a three-year period Argosy paid substantial fees and disbursements to the attorneys representing it in the dispute. An accounting firm thought Argosy was entitled to $1,000,000 more than Republic had remitted; Republic contended it had overpaid.

In January, 1956, Argosy was dissolved. Each stockholder received his share of its cash, $12,822.05 in Doering's case, and of the claim against Republic. It is stipulated that the claim against Republic had no ascertainable market value when Argosy was dissolved. The former stockholders retained the same law firm that had represented Argosy to effect collection from Republic; in order to meet anticipated legal expenses, they deposited the cash they received with Bankers Trust Company, which was also to act as agent to receive and disburse any recovery. Negotiations conducted by the attorneys led to Republic's paying $540,000 in final settlement in December, 1956. Bankers Trust Company credited Doering, on his 20% share, with $108,-000, which it paid over to him after deducting $6,360 and $400 to cover his portion of the fees for legal and banking services.

Doering's 1956 return reported the excess of $120,822.05 over the basis of his stock as proceeds from the sale or exchange of a long-term capital asset, I.R. C., §§ 331(a) (1), 1001, 1002, 1011, 1012, taxable at 25% under the "alternative tax" of § 1201(b). He deducted the amounts he had paid the attorneys and the Trust Company as "ordinary and necessary expenses * * * for the production or collection of income" under § 212(1). The Commissioner disallowed the deduction, asserting that because, under the rule of C. I. R. v. Carter, 170 F.2d 911 (2 Cir. 1948) and Westover v. Smith, 173 F.2d 90 (9 Cir. 1949), cf. Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931), the amount collected by Doering from Republic was taxable at the rate applicable to long-term capital gains, the fees were capital in nature and should be subtracted from the gross amount received for the stock. The Tax Court sustained the taxpayer, four judges dissenting.

"Collection of income" would seem to have been the precise purpose for which the fees were paid. Argosy's claim against Republic did not arise from the sale of a capital asset but from the grant of the right to distribute and exhibit its films. The Commissioner concedes that Argosy's receipts from Republic were taxable as ordinary income and that its legal expenses in effectuating collection were "ordinary and necessary expenses paid or incurred in carrying on its trade or business" under § 162 and its predecessor. If Argosy had remained in business through 1956, the very legal fees here at issue would thus have been deductible under § 162. If at the outset Argosy had paid the attorneys a lump sum for all the work to be done in achieving a final disposition of the claim, that also would have been deductible under § 162, even though, as a result of the subsequent dissolution, the avails all went to the stockholders; assuming that Argosy had off-setting income, the economic impact of the legal fees here at issue thus would have been only 48% of the sum paid. More important, counsel for the Commissioner admitted at the argument that, had Doering's claim been susceptible of valuation at the time of liquidation, any excess subsequently realized by virtue of further negotiation or litigation would be taxable as ordinary income and the legal fees would be deductible under § 212(1). No different

conclusion with respect to the tax status of the legal fees is warranted by the fact that in this case "where the property distributed on liquidation has no ascertainable fair market value, the transaction is held open for tax purposes, and subsequent payments, being treated as part of the liquidation, are taxed as capital gains." Campagna v. United States, 290 F.2d 682, 684 (2 Cir. 1961).

█ What is critical under the statute is what the stockholders were trying to get, not the rate at which Congress chose to tax what they got. Ticket Office Equipment Co. v. C. I. R., 20 T.C. 272, 280 (1953), aff'd on other grounds, 213 F.2d 318 (2 Cir. 1954); United States v. Pate, 254 F.2d 480 (10 Cir. 1958); contra, Towanda Textiles, Inc. v. United States, 180 F.Supp. 373 (Ct.Cl.1960), Judge Littleton dissenting. To be sure, the Commissioner is right that the word "income" in § 212(1) is not to be given a wholly literal reading. If a taxpayer sells securities or other capital assets, § 212(1) does not permit him to deduct expenses of sale even though the sale produces a gain which constitutes "gross income," § 61(a) (3), Davis v. C. I. R., 151 F.2d 441 (8 Cir. 1945), cert. denied, 327 U.S. 783, 66 S.Ct. 682, 90 L.Ed. 1010 (1946)—any more than the provision for deduction of business expenses had permitted a similar deduction, Spreckels v. C. I. R., 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073 (1942); Isaac G. Johnson & Co. v. United States, 149 F.2d 851 (2 Cir. 1945). Similarly, the allowance in § 212(2) of a deduction for expenses paid or incurred "for the management, conservation, or maintenance of property held for the production of income," did not oust the established rule requiring capitalization of expenditures in defense of the title to property. Bowers v. Lumpkin, 140 F.2d 927 (4 Cir.), cert. denied, 322 U.S. 755, 64 S.Ct. 1266, 88 L.Ed. 1585 (1944); see Mertens, Law of Federal Income Taxation (1960 revision), § 25A.16, and compare Danskin, Inc. v. C. I. R., 331 F.2d 360 (2 Cir. 1964). But neither of these principles carries the day for the Commissioner in this case. The only disposition of a capital asset here was the exchange of Doering's stock in Argosy for a share of the company's assets; the further payments from Republic were eligible for the alternative tax of § 1201 (b), not because they represented the sale or exchange of a capital asset but because their collection constituted part of the "gain from the sale or other disposition," I.R.C. § 1001(a), of Doering's stock.

Munson v. McGinnes, 283 F.2d 333 (3 Cir.), cert. denied, 364 U.S. 880, 81 S.Ct. 171, 5 L.Ed.2d 103 (1960), followed in Spangler v. C. I. R., 323 F.2d 913, 921 (9 Cir. 1963), much relied on by the Commissioner, does not assist him. The Third Circuit there concluded that legal expenses incurred by a seller in avoiding a sale induced by the buyer's fraud and obtaining a higher price was "the kind of selling expense which must be capitalized," since the problem was still "to reach mutually satisfactory or binding terms of sale." 283 F.2d at 335. Judge Hastie carefully differentiated true cases of "collection" of income; on that basis he distinguished Naylor v. C. I. R., 203 F.2d 346 (5 Cir. 1953), which held that legal fees incurred in collecting the amount claimed to be due under a contract of sale qualified for deduction under the predecessor of § 212 (1), even though the sale was of a capital asset. Doering naturally relies on Naylor but neither he nor we need go so far; we leave open whether we would follow that decision on facts such as were there presented. The decision of this Court in Isaac G. Johnson & Co. v. United States, supra, 149 F.2d 851, relied upon by our dissenting brother, went upon the ground that the expenses there in question were "incident to a sale of a capital asset." See footnote 4, p. 852. Neither of these ingredients is present here.

█ It is quite true that for taxpayers whose income attains brackets attracting rates considerably above 25%, the result reached by the Tax Court makes the economic bite of the expenses much softer than if these were required

to be deducted from the receipts. But it is equally true that the position urged by the Commissioner could produce a seemingly unjustifiable difference in result between a case like the present and one where the corporation had paid the legal fees before the distribution; and concentration of attention on the tax benefit of deductions may sometimes obscure that what the taxpayer would truly have liked was not to have to make the payment at all.[1] In any event it is not appropriate for courts to deny benefits to which taxpayers are entitled under a normal reading of the words used by Congress in the absence of clear evidence of contrary Congressional purpose. Hanover Bank v. C. I. R., 369 U.S. 672, 687, 82 S.Ct. 1080 (1962). We find nothing to indicate that Congress meant to eliminate from § 212 expenses coming within the ordinary meaning of the language save those, such as expenses of purchasing and selling, in defense of title, and other capital expenditures (e. g., for improvements), which had long been banned under § 162 and its predecessors. In fact the legislative history is rather unfavorable to the Commissioner's position. The Committee Reports on the bill adding what has become § 212 stated that "The term 'income' * * * is not confined to recurring income but applies as well to gain from the disposition of property." 77th Cong.2d Sess., H.R.Rep.No.2333, 75, S.Rep.No.1631,

87 (1942). Consistent with this the Regulations, § 1.212–1(b), say that when the section speaks of "income," it "is not confined to recurring income but applies as well to gains from the disposition of property" and gives as an example the purchase of defaulted bonds "with the expectation of realizing capital gain on their resale, even though no current yield thereon is anticipated." The Regulations do rule out "(k) Expenses paid or incurred in defending title to property * * *," and "(n) Capital expenditures * * *," but Doering's payments do not fall under these rubrics.

Affirmed.

HAYS, Circuit Judge (dissenting):

The majority opinion rests on the language of the statute. " 'Collection of income' would seem to have been the precise purpose for which the fees were paid." But the attitude of assurance conveyed by this resort to literalism is considerably shaken when we examine the authorities. The majority opinion itself concedes that "income" "is not to be given a wholly literal reading," citing cases in which § 212(1) was not applied to expenditures for the "collection of income." Davis v. C. I. R., 151 F.2d 441 (8th Cir. 1945), cert. denied, 327 U.S. 783, 66 S.Ct. 682 (1946); Spreckels v. C. I. R., 315 U.S. 626, 62 S.Ct. 777 (1942); Isaac G. Johnson & Co. v. United States, 149 F.2d 851 (2d Cir.

1. In large measure this is the answer to the hypothetical case put in the dissent in the Tax Court, to which our brother Hays refers—a set of facts that may seem a shade academic to lawyers who have had to collect fees for making collections. The hypothetical taxpayer would be out of pocket not only for the $27,000 tax for which (assuming a zero basis) he would have been liable even if he had collected the claim without expense, but also for a part of the legal fees; we fail to see why justice so palpably requires that he realize a net of only $28,500 rather than of $81,000 less whatever portion of the $70,000 legal fees was not saved by deduction from ordinary income that we should refuse to apply the language of the Internal Revenue Code in its ordinary and established sense. Unlike the

taxpayers in Hanover Bank v. C. I. R., 369 U.S. 672, 82 S.Ct. 1080, 8 L.Ed. 2d 187 (1962), Doering did not initiate a capital transaction for the deliberate purpose of registering an ordinary loss; yet there the deduction was allowed, because Congress had said it should be. The statement that the majority view of the Tax Court would have the result in the hypothetical case that "a transaction actually producing a net profit would appear on the return as a net loss" overlooks that the issue concerns two transactions—the exchange of taxpayer's stock for a claim and the collection of the claim. The availability of the 25% tax rate stems from the first transaction; the deductibility of the legal expense from the second.

1945). One might also refer to United States v. Gilmore, 372 U.S. 39, 44–46, 82 S.Ct. 623, 9 L.Ed.2d 570 (1963); Lewis v. C. I. R., 253 F.2d 821, 825 (2d Cir. 1958); General Bancshares Corp. v. C. I. R., 326 F.2d 712 (8th Cir. 1964).

In fact the only authority cited for the majority's position is Naylor v. C. I. R., 203 F.2d 346 (5th Cir. 1953), a decision, the soundness of which is questioned in Spangler v. C. I. R., 323 F.2d 913, 919–20 n. 15 (9th Cir. 1963), which is characterized by Mertens as "questionable" (4 Mertens, Law of Federal Income Taxation § 25A.12 fn. 40 (1960 revision)), and about which the majority itself leaves open the question as to whether this court would follow it on its facts.

The majority is sure that the transaction here in question must be characterized for the purpose of § 212(1) as the collection of income because the amount collected would have been income if Argosy had not been liquidated and its assets distributed. But Argosy *was* liquidated and the payment to the taxpayer was in fact a part of the distribution of its assets. As the government says in its Brief "not only was the capital transaction open when the contested expenses were incurred, but they also had their origin in the liquidation exchange and were an essential incident to that transaction."

The conclusion that the legal expenses must be capitalized is vividly emphasized by the hypothetical situation set forth by Judge Raum's dissent in the Tax Court:

> "If, for example, the expenses herein were $70,000, we would have the strange result that at most only $54,000 would be reportable as income (one-half of the $108,000 proceeds, by reason of the capital gains

provisions) whereas a deduction of $70,000 would be allowable under the Court's decision. Thus, a transaction actually producing a net profit would appear on the return as a net loss."

Surely we are not compelled to read the statute in a way that will produce so bizarre a result.

If it were well established by judicial construction of Section 212(1) that an ordinary deduction could be taken for legal expenses incurred in factual circumstances such as those before this court, we should of course hesitate to introduce uncertainty into the tax law by reaching a contrary result. But the court is presented here with a unique situation and prior decisions dealing with similar circumstances are sharply in conflict. See, e. g., Naylor v. C. I. R., supra; Munson v. McGinnes, 283 F.2d 333 (3d Cir.), cert. denied, 364 U.S. 880, 81 S.Ct. 171 (1960); Spangler v. C. I. R., supra; United States v. Pate, 254 F.2d 480 (10th Cir. 1958); Towanda Textiles, Inc. v. United States, 180 F.Supp. 373 (Ct.Cl. 1960) (3–1).

The decision of this circuit that is closest in point is Isaac G. Johnson & Co. v. United States, 149 F.2d 851 (2d Cir. 1945), which held that legal expenses in a condemnation proceeding must be capitalized. Accord, Williams v. Burnet, 61 App.D.C. 181, 59 F.2d 357 (1932). Under state law title vested in the state upon the initiation of the condemnation proceedings; the subsequent litigation was concerned only with determining the amount of compensation required under the standard of fair market value.[1] This decision is patently antithetical to Naylor v. C. I. R., supra. In both the "sale" had been consummated and all that remained was to settle a dispute concerning the "sales" price—"book value" in one case,

---

1. The taxpayer was also required to prove its prior title in order to be entitled to compensation. But, as the district court opinion pointed out,

> "Production of the recorded deed proved title prima facie and that required no lawyer and the litigation could

> not have proceeded without such initial proof; so the expenses cannot be said to have gone to defend or fortify title * * *."

Isaac G. Johnson & Co. v. United States, 55 F.Supp. 764, 765 (S.D.N.Y.1944).

"fair market value" in the other. That is also the situation in the present case, the dispute being over what constitutes the "profits" of Republic in which Argosy was to share.

The controlling principle in this case is that stated in Towanda Textiles, Inc. v. United States, supra:

"For many years it has been recognized that fees incurred in realizing a capital gain must be deducted from the gross amount received to arrive at the net gain for tax purposes."

180 F.Supp. at 377. That principle, which was the foundation of this court's decision in Isaac G. Johnson & Co. v. United States, supra, requires us to rule for the Commissioner in this case.

I would reverse the decision of the Tax Court.