Estate of Joseph M. Meade, deceased, First National Bank of Florence, Executor, and Hazel B. Meade v. Commissioner. William S. and Elizabeth King v. Commissioner.
Estate of Meade v. Commissioner
Docket Nos. 2343-70, 2657-70.
United States Tax Court
T.C. Memo 1972-190; 1972 Tax Ct. Memo LEXIS 69; 31 T.C.M. (CCH) 935; T.C.M. (RIA) 72190; August 29, 1972
*69 Petitioners received as part of the proceeds from liquidation of a corporation a potential civil antitrust claim having no ascertainable fair market value. The claim was settled and petitioners deducted the attorneys' fees as expenses paid for the collection of income. Respondent determined such expenses to be an offset to the capital gain realized from settlement of the antitrust claim. Held, the expenses are deductible under section 212(1) I.R.C. 1954 as being paid for the production of income. J. Gilmer Blackburn, Mutual Savings Bldg., P. O. Box 757, Decatur, Ala. for the petitioners. Robert D. Hoffman, for the respondent. 936 GOFFE
Memorandum Opinion GOFFE, Judge: Respondent determined deficiencies in the Federal income taxes of petitioners as follows: Dkt.
Defi-
No.
Petitioner
Year
ciency
2343-70
Estate of Joseph Meade, Deceased, First Na- tional Bank of Flor- ence, Executor, and Hazel B. Meade
1966
$29,991.37
2657-70
William S. King and Elizabeth King
1966
65,221.26
Upon joint motion by all the parties these cases were consolidated for trial, briefs and opinion. The sole issue for decision is whether legal fees paid by the petitioners for the purpose of pursuing a civil antitrust claim assigned to them in pro rata shares as distributees in a corporate liquidation are deductible under section 212 of the Internal Revenue Code *71 of 1954. [1]
All of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein and adopted as our findings. Petitioner Estate of Joseph M. Meade, Deceased, First National Bank of Florence, Executor, is a successor petitioner to Joseph M. Meade who died on January 12, 1971, after the filing of the petition in docket No. 2343-70. Joseph M. Meade and his wife, Hazel B. Meade, were residents of Florence, Ala. when the petition was filed. They filed their joint Federal income tax return for the taxable year 1966 with the director, internal revenue service center at Chamblee, Ga. Petitioners William S. King and Elizabeth King, husband and wife, were residents of Florence, Ala. when they filed their petition herein. They filed their joint Federal income tax return for the taxable year 1966 with the director, internal revenue service center, Chamblee, Ga. William S. King and Joseph M. Meade (hereinafter sometimes referred to as petitioners or King and Meade) were partners in the ratio of two thirds and one third respectively *72 during the taxable year 1966 in a partnership named King and Meade. It filed a U.S. Partnership Return of Income for the taxable year 1966. Meade and King were the sole stockholders of Terrace Corporation (formerly named Alabama Wire Company, Inc.), owning the outstanding stock in the ratios of one third and two thirds, respectively. They liquidated the corporation on February 15, 1965, and on the following day created the King and Meade partnership. Alabama Wire Company, Inc. (hereinafter referred to as Alabama Wire) and its wholly owned subsidiary, Columbia Metal Products, Inc. (hereinafter referred to as Columbia Metal), in 1963 employed the law firm of Hansell, Post, Brandon and Dorsey of Atlanta, Ga. to advise them whether Kaiser Aluminum & Chemical Corporation (hereinafter referred to as Kaiser Aluminum) had violated the Federal antitrust laws. Legal services performed by the firm included conferences with the clients and with the U.S. Department of Justice and the Federal Trade Commission in an attempt to bring about an investigation of Kaiser Aluminum. Alabama Wire and Columbia Metal paid the firm a total of $25,000 in legal fees in May and June of 1963. The efforts of *73 the law firm in this pursuit ceased in early 1964. When Terrace Corporation was liquidated, Meade and King received as a portion of the proceeds from the liquidation the potential claim which the corporation had against Kaiser Aluminum for treble damages resulting from possible violations of the Federal antitrust laws. The potential claim had no ascertainable fair market value at the time of distribution on February 15, 1965. In mid-1965, the Hansell, Post, Brandon & Dorsey law firm rendered an opinion too Meade and King on the possibilities of their filing an action for treble damages against Kaiser Aluminum. Based on this opinion, Meade, King and the law firm agreed upon a fee arrangement whereby the law firm would receive from them a monthly retainer of $1,500 for the months of July, August and September, 1965, and thereafter a monthly retainer of $750 until the matter was concluded; however, during the months of trial of the case the monthly retainer would be $2,000. In addition, Meade and King agreed to pay monthly all of the expenses of the firm in connection with the matter and an additional fee of 20 percent of the amount recovered from Kaiser Aluminum, if any. 937
*74 It was later concluded that a civil suit should be instituted on behalf of Meade and King in the United States District Court in San Francisco, Cal. and that counsel located in San Francisco should be employed. Meade and King employed Mr. Joseph L. Alioto as such counsel with a $10,000 retainer. They also modified the fee arrangement with the Atlanta law firm whereby the monthly retainer would be discontinued until the retainer of $10,000 was paid to Mr. Alioto. In addition, the attorneys (both Atlanta and San Francisco) were given a 33 percent participation (collectively) in the recovery, if any. In 1965, King and Meade individually as assignees of the cause of action of Columbia Metal and Alabama Wire, filed suit against Kaiser Aluminum in the United States District Court for the Northern District of California, Southern Division under sections 4, 12 and 16 of the Clayton Act (15 U.S.C. secs. 15, 22 and 26) to recover treble damages resulting from Kaiser Aluminum's alleged violations of sections 1 and 2 of the Sherman Act (15 U.S.C. secs. 1 and 2). The complaint in that suit contained allegations that Columbia Metal purchased aluminum *75 ingots from Alcoa, Reynolds Metals Company and Kaiser Aluminum whose production constituted over 92 percent of the aluminum ingots produced in this country. From such ingots Columbia Metal manufactured aluminum rods which are drawn through dies to produce various sizes of wire which in turn is woven into screening. One type of rod manufactured by Columbia Metal was called Alclad Rod of which it sold its entire production to Alabama Wire. The parent corporation, Alabama Wire, at various times, sold some of the rods and further manufactured other rods into wire screening all of which it sold to various customers throughout the country. King and Meade further alleged that Kaiser Aluminum and Alcoa produced 88 percent of the Alclad Rod output and Columbia Metal produced the other 12 percent, such production constituting 50 percent of Columbia Metal's total output of aluminum rods. They alleged that Kaiser Aluminum and Alcoa conspired to set the price of the aluminum ingots at a high level and at the same time reduced the price of the finished product, Alclad Rods, thereby forcing Columbia Metal out of business. They alleged further that such practice of Kaiser Aluminum and Alcoa resulted *76 in the loss of profits to Columbia Metal, destruction of its goodwill, and created a loss from the sale of the business at a price which would have been higher had not the defendants committed the alleged acts. King and Meade alleged damages of $3,000,000 which, under the Sherman Act, produced threefold damages of $9,000,000. The suit against Kaiser Aluminum was settled in 1966 for $900,000 which was paid $600,000 to King and $300,000 to Meade. They reported these amounts on their respective income tax returns for 1966 as additional long-term capital gain realized by them from the liquidation of Terrace Corporation. Respondent has not challenged the tax treatment of the $900,000 recovery. During 1966, King and Meade paid out of their joint bank account a total of $56,326.67 for monthly advances of attorney fees and expenses of the litigation against Kaiser Aluminum. These expenditures were allocated $37,551.12 to King and $18,775.55 to Meade. Following settlement of the suit, Meade and King paid the remainder of the attorneys' fees previously agreed to, $177,778 by King and $86,889 by Meade. They each deducted all the fees and legal expenses paid in 1966 on their respective Federal *77 income tax returns for that year as Miscellaneous Deductions under Part IV. Respondent determined that King's and Meade's respective shares of the partnership profit should be adjusted by disallowing the legal fees and expenses as a deduction under section 212, [2] but allowing them as offsets to the long-term capital gains reported by each resulting from settlement of the suit. Petitioners rely on Otto C. Doering, 39 T.C. 647 (1963), affd. 335 F. 2d 738 (C.A. 2, 1964). The holding in Doering, supra, is that legal expenses paid to collect income, even though the income collected is capital gain, are deductible under section 212. Respondent argues that the facts in the instant case are distinguishable *78 from those in Doering, supra.He contends that the claim which was distributed to the stockholders in Doering, supra, was an established claim 938 and nothing remained to be done except to collect it, but in the instant case the claim distributed to Meade and King was a bare claim which contemplated legal fees to establish the claim and bring about collection. He concludes that such legal fees are analogous to liabilities assumed upon liquidation and, therefore, must be capitalized. We find no merit to such a distinction in facts. Our holding in Doering, supra, is based upon an analysis of the purpose for which the legal expenses were incurred. We found there that the expenses were incurred for the collection of income. Likewise we find such a purpose here. Such expenses are not tainted with the aspect of a capital expenditure because they were contemplated at the time the corporation was liquidated. Respondent, after attempting to distinguish Doering, supra, argues that our opinion and that of the Court of Appeals for the Second Circuit in Doering are incorrect.we are unconvinced that the opinions in Doering are wrong. *79 Respondent makes the same arguments here that he made in Doering. No useful purpose would be served by repeating them. We have continued to apply the rationale of Doering and can see no reason to abandon it here. Respondent argues that petitioners should not prevail because they cannot satisfy the so-called "origin of the claim" test applied by the Supreme Court in United States v. Gilmore, 372 U.S. 39 (1963); Woodward v. Commissioner, 397 U.S. 572 (1970); and United States v. Hilton Hotels Corp; 397 U.S. 580 (1970). We conclude that respondent fails when such test is applied. That test requires inquiry into the origin and character of the claim which is the subject of litigation. Respondent admits that if the corporations (Alabama Wire and Columbia Metal) had received the $900,000, it would constitute income. The character of the claim is, therefore, collection of income. Its origin was the alleged violations of the antitrust laws by Kaiser Aluminum. By "origin" of the claim we do not construe that to mean how the claim was acquired by the taxpayers who pursue it but instead we conclude that it means the event which gave rise to the claim. *80 United States v. Gilmore, supra. We do not believe that a transformation of the tax treatment of the realization on the claim from ordinary income to capital gain brought about by the corporate liquidation changes the origin and character of the claim. It remains a claim for the collection of income. It follows, therefore, that the attorneys' fees and expenses are deductible under the provisions of section 212(1). Decisions will be entered for the petitioners in docket Nos. 2343-70 and 2657-70. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 212. EXPENSES FOR PRODUCTION of income. i/n the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income:↩