JACK'S MAINTENANCE CONTRACTORS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jack's Maintenance Contractors, Inc. v. Commissioner
Docket No. 11114-79.
United States Tax Court
T.C. Memo 1981-349; 1981 Tax Ct. Memo LEXIS 393; 42 T.C.M. (CCH) 330; T.C.M. (RIA) 81349; July 6, 1981
*393 A, an individual, incorporated his sole proprietorship as C corporation (petitioner). As C's president and sole shareholder, A made all management decisions and was solely responsible for C's acquisition of new business. Following C's incorporation, A (and his wife) were indicated for criminal tax violations and charged with having failed to include certain receipts of the sole proprietorship as business income on their joint returns. C paid A's legal fees in connection with the criminal tax case. Held: C may deduct the legal fees it paid for A's defense under sec. 162(a), I.R.C. 1954. Lohrke v. Commissioner, 48 T.C. 679 (1967), followed. United States v. Gilmore, 372 U.S. 39 (1963), discussed. Michael S. Fawer, for the petitioner. Alan H. Kaufman, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies of $ 13,235 and $ 4,908 in petitioner's Federal income taxes for 1975 and 1976, respectively. Because of concessions by both parties, the only issue presented is whether petitioner, a corporation, is entitled to deduct legal fees it paid in 1975 for the defense of its president, the corporation's sole shareholder, on charges of criminal tax fraud. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Jack's Maintenance Contractors, Inc., was a Louisiana corporation whose principal place of business was Belle Chasse, La., at the time the petition was filed *395 herein. In or around 1967, Jack Farmer (hereinafter Farmer) went into business for himself with a handful of employees as Jack's Maintenance Contracting Company (the Company). Farmer operated the Company out of his home as a sole proprietorship. His principal business activities were painting, sandblasting, waterproofing, and doing general repair work on bridges, high stacks (smokestacks), high towers, large buildings, and other tall structures. Farmer was solely responsible for the acquisition of new business, for making estimates, and for submitting bids on available work. In the initial years, Farmer got some jobs simply by keeping his eyes open for work that needed to be done and then volunteering his services. In addition to handling all sales and estimates, purchasing supplies, and hiring employees; Farmer put in long hours doing much of the actual work himself. The Company was very successful. Its gross receipts grew from $ 46,736 in 1967 to $ 546,863 in 1971. On April 25, 1972, the Company was incorporated as Jack's Maintenance Contractors, Inc. (petitioner or the corporation). Farmer was petitioner's president and sole shareholder. By this time, Farmer used a *396 working foreman to supervise crews in the field on some jobs. Petitioner's workforce grew to 40 or 50 employees by the mid-1970's, and gross receipts grew to $ 2,596,206 for 1976. Nevertheless, Farmer continued to be solely responsible for all important business decisions of the corporation. Most importantly, Farmer alone estimated the costs and submitted the bids for work to be done by petitioner. Moreover, the creditors and suppliers of the business continued to rely on the credit of Farmer, who was personally responsible for all of the corporation's outstanding bank loans. In short, Farmer was vital to petitioner's financial health. He could not have been replaced. Starting in 1976 or 1977, that is, subsequent to the year in issue, petitioner first employed additional estimators. Sometime thereafter, administrative personnel were hired to help manage the corporation, which had 120 to 200 employees by the time of trial in 1980. However, the growth of the business since 1975 has remained largely dependent on the personal reputation and experience of Farmer. In March of 1973, Farmer and his wife, Darlene, were first contacted by a special agent of the Internal Revenue *397 Service concerning the possibility of criminal tax violations of the Internal Revenue Code by them. On December 24, 1974, the case was referred to the Department of Justice. On or about January 15, 1975, Farmer and his wife retained attorney Michael Fawer (Fawer) to represent them in the proposed criminal case. On July 31, 1975, Farmer and his wife were indicted for violations of sections 7201 [1] (attempt to evade or defeat tax) and 7206(1) (untrue declaration under penalties of perjury) with respect to their income tax returns for 1970 and 1971. Each such violation would have been a felony. The indictments charged the Farmers with omitting from Schedule C of their returns certain gross receipts of the sole proprietorship, Jack's Maintenance Contracting Company. Farmer and his wife had filed joint returns for those years. The jury trial of the case United States v. Jack H. Farmer and Darlene V. Farmer, Docket No. 75-460 (E.D. La), on the above indictments began on January 19, 1976. However, on January 22, 1976, all criminal charges against the Farmers were dismissed at the request *398 of the United States Attorney in charge of the case. [2]
During 1975, petitioner-corporation paid Fawer $ 25,407.02 for representing the Farmers. Fawer's retainer of $ 10,000, paid by petitioner in January 1975, was initially recorded on petitioner's books and records as an account receivable due from officers. Subsequent to the end of the taxable year, this amount was removed from the "Accounts Receivable-Officers" account and recorded as a "legal & accounting" expense. Other payments totaling $ 15,407.02 made by petitioner to Fawer in 1975 well all recorded as "legal & accounting" fees. On its income tax return for 1975, petitioner-corporation deducted the payments to Fawer as legal expenses incurred in its trade or business. This deduction was disallowed by respondent in his statutory notice. OPINION In 1975, petitioner, a corporation, paid legal fees to an attorney defending petitioner's president and sole shareholder, Jack Farmer (Farmer), who was charged with criminal income tax evasion and perjury on his returns for the years 1970 and 1971. Farmer's wife was also *399 involved by virtue of the couple's having filed joint returns for those years. The criminal case centered on certain gross receipts allegedly omitted from the Farmers' returns relating to petitioner's predecessor, Farmer's sole proprietorship. The issue presented is whether petitioner may deduct the legal fees it paid for the Farmers' defense under section 162(a), which allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Respondent analyzes the case as follows: The legal expenses were paid in connection with Farmer's criminal tax problems, which involved tax years prior to petitioner's incorporation. Therefore, respondent contends, the expenses did not originate in petitioner's conduct of its trade or business. Respondent argues that the hardship to petitioner which would result from Farmer's conviction and incarceration are of no import because United States v. Gilmore, 372 U.S. 39, 49 (1963), directs us to consider the "origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer. *400 " Thus, respondent concludes, the expenses are not deductible by petitioner because they were actually incurred by Farmer. Petitioner argues that the legal fees it paid for Farmer's defense were vital to the survival of its business. Petitioner contends that Farmer's role in the affairs of the corporation was indispensable and that he could not have been replaced. Petitioner argues that Gilmore does not preclude deductibility because the legal fees petitioner paid would clearly have been deductible as business expenses by its predecessor, Farmer's sole proprietorship. [3] For the reasons which follow, we find for petitioner. *401 Respondent has misconceived the issue in this case by confusing the questions "whether deductible" and "deductible by whom." The "origin of the claim" test of United States v. Gilmore, supra, is applied to determine whether an expenditure is deductible. Whether another taxpayer may also pay and deduct that expense is a different issue. In Gilmore, the Supreme Court resolved a conflict among the circuits by firmly rejecting the notion that an expenditure may be deductible based solely upon the consequences to the payor or to his property. The taxpayer in Gilmore had incurred litigation expenses in drawn-out, sensational divorce proceedings. He argued that he was entitled to deduct such expenses as costs incurred to protect his interests in certain income-producing properties. Reversing the Court of Claims, the Supreme Court held: the characterization, as "business" or "personal," of the litigation costs of resisting a claim depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities. It does not depend on the consequences that might result to a taxpayer's income-producing property from a failure *402 to defeat the claim, * * *. [372 U.S. at 48] Thus, on the ground that the divorce action was based on the taxpayer's marital relationship and not any income-producing activity, the deduction was disallowed. The "origin of the claim" test set forth in Gilmore has since been applied to a wide variety of problems involving the deduction of business expenses. E.g., Woodward v. Commissioner, 397 U.S. 572 (1970) (costs arising in connection with the acquisition of property, held capital and nondeductible); Commissioner v. Tellier, 383 U.S. 687 (1966) (expenses of unsuccessful criminal defense where taxpayer was convicted of securities fraud, held deductible; the charges arose in connection with taxpayer's trade or business as an underwriter); Von Hafften v. Commissioner, 76 T.C. No. 70 (May 21, 1981). Applying Gilmore to the facts in this case, it is clear that the legal fees paid for the Farmers' defense would have been deductible by Farmer had he not incorporated his sole proprietorship. Respondent readily conceded this both at trial and on brief. The indictment charged Farmer and his wife with having *403 failed to include certain Company receipts as business income on Schedule C of their joint returns for 1970 and 1971. Accordingly, viewed solely from the perspective of Gilmore, the legal fees at issue herein were business expenses because they were based upon Farmer's operation of and tax returns for his sole proprietorship. That such expenses were paid in defense of a criminal charge is no bar to deductibility. Commissioner v. Tellier, supra.See Commissioner v. Heininger, 320 U.S. 467 (1943); Conforte v. Commissioner, 74 T.C. 1160, 1189-1190 (1980); Johnson v. Commissioner, 72 T.C. 340, 347-348 (1979). The real issue in this case is whether one person can deduct the expenses of another; that is, whether petitioner, as the corporate successor to Farmer's sole proprietorship, may deduct the legal fees it paid for Farmer's defense. The general rule is that a taxpayer may not deduct the payment of another's expenses. See Deputy v. du Pont, 308 U.S. 488 (1940). Moreover, transactions involving a sole shareholder and his corporation are subject to careful scrutiny because such parties *404 are able to deal with one another at less than arm's length. However, in Lohrke v. Commissioner, 48 T.C. 679, 684-685 & 688 (1967), after an extensive review of the case law, we held: As in the case of most general rules, an exception to this one has been developed. In a number of cases, the courts have allowed deductions when the expenditures were made by a taxpayer to protect or promote his own business, even though the transaction giving rise to the expenditures originated with another person and would have been deductible by that person if payment had been made by him. A review of these cases leads us to conclude that in some situations in individual may deduct the expenses of another person. * * * The tests as established by all of these cases are that we must first ascertain the purpose or motive which cause the taxpayer to pay the obligations of the other person. Once we have identified that motive, we must then judge whether it is an ordinary and necessary expense of the individual's trade or business; that is, is it an appropriate expenditure for the furtherance or promotion of that trade or business? If so, the expense is deductible by the individual *405 paying it. In Rushing v. Commissioner, 58 T.C. 996 (1972), we applied the Lohrke exception to the deduction of legal expenses. See also Newark Morning Ledger Co. v. United States, 539 F.2d 929 (3d Cir. 1976); Young & Rubicam, Inc. v. United States, 187 Ct. Cl. 635, 410 F.2d 1233 (1969); Gould v. Commissioner, 64 T.C. 132 (1975); Snow v. Commissioner, 31 T.C. 585 (1958); Catholic News Publishing Co. v. Commissioner, 10 T.C. 73 (1948). Such cases are not really "exceptions" in the sense that a different rule has been applied. It would be more accurate to say these cases are exceptional, because only rarely will volunteering to pay another's expense be an "ordinary" as well as "necessary business expense for purposes of section 162. See, e.g., Deputy v. du Pont, supra; Welch v. Helvering, 290 U.S. 111 (1933); Friedman v. Delaney, 171 F.2d 269 (1st Cir. 1948). Compare Union Investment Co. v. Commissioner, 21 T.C. 659 (1954) (payment of officer's legal fees required under contract). This case falls within *406 the rule of Lohrke. We note first that petitioner's motive in paying the Farmers' legal expenses was to keep itself in business. It is clear from the record, and we have found as a fact, that Farmer was indispensable to petitioner and irreplaceable. Not only did Farmer make all ongoing management decisions for petitioner, Farmer alone was responsible for acquiring and making bids on new business, without which petitioner would have ceased to function within a short time. Cf. Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142 (1980). Second, the expenses in issue were "ordinary" within the meaning of section 162. Surely it is "ordinary" for a corporation to pay legal fees when pending litigation threatens its very existence. See Commissioner v. Tellier, 383 U.S. 687 (1966); Commissioner v. Heininger, supra; Catholic News Publishing Co. v. Commissioner, supra.The legal fees paid were not in any sense capital expenditures. Compare Family Group, Inc. v. Commissioner, 59 T.C. 660 (1973). They were a current expense for petitioner notwithstanding their origin in the returns *407 filed by the sole proprietorship for earlier years. In short, the expenses are deductible because they were both "ordinary" and "necessary" under section 162. This case actually falls within a special subset of the Lohrke line of cases, in which the payor is the successor to the entity on whose behalf the expenses are later incurred. In such circumstances, courts have frequently allowed deductions for the expenses of resolving inherited problems. See Doering v. Commissioner, 39 T.C. 647 (1963), affd. 335 F.2d 738 (2d Cir. 1964); Scruggs-Vandervoort-Barney, Inc. v. Commissioner, 7 T.C. 779 (1946); Kelley v. Commissioner, 38 B.T.A. 1292 (1938). See also Rev. Rul. 73-226, 1973-1 C.B. 62; Lutz v. Commissioner, 282 F.2d 614 (5th Cir. 1960). An illustrative case is Holdcroft Transp. Co. v. Commissioner, 153 F.2d 323 (8th Cir. 1946), affg. a Memorandum Opinion of this Court (4 TCM 508, 1945 P-H T.C. Memo. par. 45,167). In Holdcroft, the corporate taxpayer had acquired the assets and liabilities of a partnership in a tax-free incorporation under section *408 112(b)(5), I.R.C. 1939 (current sec. 351). At the time of incorporation, there were outstanding contingent claims against the partnership, which were eventually settled by the taxpayer. The Court of Appeals affirmed our holding that, although the taxpayer's payments of the outstanding claims were a nondeductible capital cost of acquisition (see Arrowsmith v. Commissioner, 344 U.S. 6 (1952)), the attorney's fees paid in connection with settling the claims were deductible as a current expense. Holdcroft is soundly reasoned and applies here. Petitioner in this case paid the costs of litigation instituted against its predecessor, which happened to be a sole proprietorship. In such a case, the deduction is allowable under the rationales of both Lohrke and Gilmore. [4] See also Kornhauser v. United States, 276 U.S. 145 (1928). *409 To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Deficiencies for 1970 and 1971 were paid by the Farmers and have not since been contested.↩
3. Alternatively, petitioner argues, presumably to protect the interests of Farmer himself, that its payment of Farmer's legal fees should be considered as a repayment of corporate indebtedness to Farmer. Because we decide this case on the grounds set forth in the text, we do not reach this issue. Moreover, whether the benefits to Farmer constituted loan repayments or corporate dividends to him matters not one whit to petitioner-corporation, who would be entitled to no deduction in either case and who does not argue that the payments on Farmer's behalf were in the nature of compensation. For similar reasons, we reject petitioner's reliance on Parker v. Commissioner, 365 F.2d 792, 801 (8th Cir. 1966), affg. in part and revg. in part T.C. Memo. 1965-77. The issue decided in Parker was whether the founder and chief officer of a religious mail-order corporation received taxable income when the corporation paid for his criminal defense on a morals charge. Despite some broad dicta by the Court of Appeals, deduction by the corporation of such legal fees plainly was not in issue. It cannot be overemphasized that when identical facts involve both inclusion by a corporate employee or shareholder and the corporation's deduction, these are different issues which are not necessarily interdependent. The correct characterization of a transaction will of course apply to both parties, but the issues need not be symmetrically related. In a loan/dividend case, the corporation gets no deduction no matter how the issue is resolved as to the shareholder-employee. See Berthold v. Commissioner, 404 F.2d 119 (6th Cir. 1968), affg. a Memorandum Opinion of this Court. Compare Haber v. Commissioner, 422 F.2d 198 (5th Cir. 1970), affg. 52 T.C. 255 (1969) (loan/compensation). In a dividend/reasonable compensation case, the shareholder employee has income of some kind no matter how the issue is resolved as to the corporation. See Kennedy v. Commissioner, 72 T.C. 793 (1979), appeal filed (6th Cir., Mar. 14, 1980). And corporate payments which also benefit an employee may or may not result in income (or whatever character) to him (which may or may not be accompanied by an offsetting deduction) without regard to deductibility by the corporation. Cf. Greenspun v. Commissioner, 72 T.C. 931, 948-950 & nn. 20, 21 (1979), appeal filed (9th Cir., Nov. 20, 1979). See generally Blackburn v. Commissioner, T.C. Memo. 1973-254↩. Keeping the precise issue presented sharply in focus will dissipate much of the apparent conflict to be found in some cases in this general area.
4. There may well be cases in which the Lohrke and Gilmore lines of cases ultimately come into conflict. Cf. Parker v. Commissioner, supra, (religious mail-order corporation's payments for principle officer's defense on a morals charge might be deductible under Lohrke but not Gilmore). See also Newark Morning Ledger Co. v. United States, 539 F.2d 929, 934↩ n. 6 (3d Cir. 1976). This is not such a case.