OPINION. Black, Judge: Petitioner contends that he did not actually or constructively receive any part of the amount of $5,908.05, and that, if it be deemed that any part of such amount constitutes additional income to him in 1939, then he is entitled to deduct an amount equivalent thereto as either (a) an ordinary and necessary business expense or (b) as an annual depreciation of a depreciable capital asset. The respondent contends that royalties in the amount of $5,908.05 which were payable to petitioner by the company in 1939 under the terms of a contract entered into between petitioner and the company under date of November 9, 1933, were constructively received by petitioner and constituted income to him under the provisions of section 22 (a) of the Internal Bevenue Code. We think the Commissioner must be sustained in this contention. Up to the date of the contract of November 9, 1933, the company had a right to manufacture and sell the Stayform garments without the payment of a royalty to anyone. This right extended from June 1,1927, to December 31,1940, by virtue of a contract which the company had with Hanskat, the owner of the patent and the trade-mark. By the contract of November 9, 1933, the company conveyed this contract right to petitioner for the considerations named in the contract and thereafter petitioner was not only the owner of the rights which he had acquired under the contracts with Hanskat on August 19 and October 21, 1933, but ho was also the owner of the rights which the company acquired from Hanskat in June 1927. In the contract dated November 9, 1933, the company expressly agreed “to pay to the party of the second part [petitioner] a royalty of ten cents per garment on the gross sales of The StayeoRM Company-.” Plainly these royalties would have been paid direct to petitioner in the taxable year except for the fact that petitioner had, prior to the taxable year, assigned the contract to Hanskat “as security for the payments of royalty by myself to Rose Hanskat as provided for in the contract between the undersigned and Rose Hanskat.” The fact that under the foregoing assignment the royalties were paid direct to Hanskat rather than to petitioner does not make them any the less taxable to petitioner. The payments, when made by the company, were royalty expenses as to it, due to petitioner for the use of the patent and the trade-mark and the incidental right to the services of Hanskat in an advisory capacity, and they were deductible by the company as royalties paid. The Commissioner has allowed the deduction to the company and we have no reason to assume that the deduction was not proper. The royalties under the contract were, as we have already said, payable to petitioner for the rights granted by him to the company under the contract of November 9, 1983. If such royalties had been paid to him direct they certainly would have been taxable to him as royalties received. They were not so paid to him because he was indebted to Hanskat under his contract of October 21, 1933, whereby his note for $25,000 was fully paid, the 8,762.5 shares of stock in Stayform were delivered to him, and other valuable rights were granted to him by said contract. These payments, made in 1939 by the company to Hanskat under the assignment of the contract of November 9, 1933, were payments for petitioner’s benefit and represented income to him. To what extent, if any, such payments were taxable to Rose Hanskat we express no opinion. We do not have her case before us. Petitioner strongly contends in his brief that at least many of the payments made to Hanskat in the taxable year were made to her in payment of her services to the company in an advisory capacity. We think the evidence does support the contention that Hanskat rendered valuable services to the company in an advisory capacity and we have found that the value of these services was one-third of the total of $5,908.05 which the company constructively paid to petitioner as royalties. We have already pointed out that so far as the company was concerned this amount was paid to petitioner as royalties. However, petitioner was obligated to pay over to Hanskat a like amount and this amount was to be paid by petitioner for a twofold purpose, to wit, payment for the purchase of capital assets and payment to Hanskat for her services in an advisory capacity in the use of the patent and trade-mark. The contract so provides. The deductibility of the one-third of $5,908.05 paid to Hanskat by petitioner as remuneration for her services in an advisory capacity, we shall now discuss. Petitioner contends in the alternative that if we should hold that the $5,908.05 in question is taxable to him as constructively received, then he is entitled to an offsetting deduction of the entire amount as an ordinary and necessary business expense. We think this contention must be sustained as to one-third of the $5,908.05 in question. The contracts of August 19 and October 21,1933, between Hanskat and petitioner clearly covered the purchase and sale of capital assets and also the rendering of services by Hanskat in an advisory capacity to the company and to petitioner incidental to the use of the patent and trade-mark. Clearly her services in that respect were of considerable value, and we have so found. In 1939 the services which she rendered were principally to the company, yet it is also clear that it was because she was under contract with petitioner to do so, and he was compensated for it in the $5,908.05 royalties which he received under his contract of November 9, 1933. When, constructively, he passed this on to Hanskat, two-thirds of it was in part payment of capital assets and one-third in payment of services which Hanskat had rendered in an advisory capacity. This latter one-third is deductible by petitioner either as a business expense or as a nonbusiness expense incurred by him in the production of income. We so hold. The remaining two-thirds is not deductible as a business expense because it represents a capital expenditure. Petitioner contends in the last place that if the Court should hold that he did constructively receive the income in question and is taxable upon it and is not entitled to an offsetting deduction of a like amount as a business expense, then he is entitled to deduct an amount equivalent to the amount received as depreciation of a capital asset acquired under his contract with Hanskat. In support of this contention petitioner cites Associated Patentees, Inc., 4 T. C. 979. We think the instant case is clearly distinguishable from that case. In that case the taxpayer was the owner of several patents which it had acquired from four individuals under a contract obligating the taxpayer to pay them each year 80 percent of its income from licenses granted to others to use the patents. Under the contract the taxpayer paid to the four individuals the sum of $49,209.76 in the taxable year. We held that the expenditure of $49,209.76 by the taxpayer under the contract was a capital expenditure, that the taxpayer was entitled to recover by depreciation its total cost of the patents over the life thereof, and that, since such cost was not determinable until the close of the term when all of the value of the patents would pass and since the yearly payments were attributable to income of the year in which made, the “reasonable allowance” for depreciation provided by section 23 (1) of the Internal Revenue Code required the allowance of a deduction in each year equivalent to the payment made in that year. We shall now discuss why we think the rule in the Associated Patentees, Inc., case, supra, is not applicable to the facts of the instant case. In the first place, petitioner did not acquire a patent from anyone. It is clear he owned no patent and it is not claimed that he did. The income which petitioner received as so-called royalties was because of his contract with the company dated November 9, 1933, For the considerations named in that contract the company conveyed to petitioner all the right which it already owned to manufacture and sell Stayform garments, which right continued on to 1940 without the payment of any royalties, and then in paragraph 2 of the contract agreed to pay to petitioner a royalty of 10 cents each on the sale of all Stayform garments for a period of 25 years, starting immediately. Clearly, the consideration which petitioner paid the company for this valuable contract by agreeing to serve as president of the company and agreeing that at all times he would retain 51 percent of the stock of the company would not furnish any basis for depreciation. At least we know of no law which would make such an arrangement the basis for a depreciation deduction. Now if it be argued that there was something in the contract dated October 21, 1933, between Hanskat and petitioner which might be the basis of depreciation, the parties having agreed in the contract of November 9, 1933, that it was executed in part because of the benefits flowing to the parties from the October 1933 contract, we still think we have no basis for granting such a deduction here. Under the October contract petitioner paid his note for $25,000 and secured immediate possession of-8,762.5 shares of stock of the company. Certainly the shares of stock which he unconditionally acquired by that contract are not subject to depreciation. Another valuable right which petitioner acquired from Hanskat under the contract of August 19, 1933, was the exclusive right to use the copyrighted trade-mark and tráde name “Stayform” for a period of 25 years from and after the expiration of the contract which Han-skat had already with the company. This right to use the trademark and trade name for a period of 25 years after 1940 was no doubt a very valuable right, but nothing was paid to petitioner under that right in 1939. That part of the contract will not begin to operate and to exhaust until 1941. If and when petitioner begins to receive income under his right received from Hanskat to the exclusive use of the trade name and trade-mark “Stayform” for 25 years after 1941, it will be soon enough to decide whether he will have the right to take depreciation for the exhaustion of that contract. We express no opinion as to that now. Petitioner also insists in his brief that in the contract of October 21,1933, Hanskat covenanted that she would not compete for a period of 25 years and that he is entitled to take depreciation on this contract not to compete. Petitioner cites B. T. Babbitt, Inc., 32 B. T. A. 693, and other cases on this point. In the Babbitt case, among other things, we said: “The decided cases are to the effect that the cost of eliminating competition is a capital asset. Where the restraint or elimination is for a definite and limited term the cost may be exhausted over such terms.” (Citing cases.) The principle of law governing such cases is clear, but petitioner has not furnished us with evidence upon which we can base the allowance of any such deduction. We have no evidence which would enable us to make, any allocation of cost to this particular part of the contract. Therefore, we have made no attempt to make such an allocation. Petitioner’s contention in this respect must fail for lack of evidence to sustain it. Decision will be entered under Bule 50.