FRANK T. FEAGANS AND ESTHER FEAGANS, HUSBAND AND WIFE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 35847, 36074, 36075. Filed November 9, 1954.

*Ben L. Shifrin, Esq.,* for the petitioners in Docket No. 35847.

*Paul M. Gerwitz, Jr., Esq.,* for the petitioners in Docket Nos. 36074, 36075.

*Ray H. Garrison, Esq.,* for the respondent.

---

[1] The proceedings of the following petitioners are consolidated herewith: Lafayette A. Dirksmeyer, Docket No. 36074, and Feagans Paint Company, Docket No. 36075.

210

214

**OPINION.**

ARUNDELL, *Judge:* We think a better understanding of this case can be had if a brief résumé of the facts is stated. Dirksmeyer was engaged in the hardware and paint business. He found another paint business that could be purchased and he needed someone to run the new business for him. He found just the right man in Feagans and offered him the opportunity to undertake the management of the newly acquired business. Feagans gave up more lucrative employment to accept the position and at the outset was to receive and did receive a small salary of $2,400 a year, plus an allowance for traveling, etc. Within a short time, the business was incorporated under the name of the Feagans Paint Company and Dirksmeyer paid into the newly organized company $10,000 which was the entire paid-in capital of the company.

The difficulty that ensued might not have arisen in just the manner it did if the newly issued shares had been issued to Dirksmeyer in his own name in payment for the capital contributed. Because Dirksmeyer did not want his competitors to know that he was conducting another paint business and, more important, by reason of the fact that Dirksmeyer was having marital difficulties, he had the 997 shares (all of the shares except qualifying ones) issued in the name of Feagans and then had the certificate for those shares endorsed over to him. This certificate was given to Dirksmeyer and was placed in the latter's safe. Some time later a second certificate was issued to Feagans for

997 shares, which certificate was not endorsed over to Dirksmeyer. This was done to have a certificate to show counsel for his wife who had commenced divorce proceedings and thus give the impression that Feagans and not Dirksmeyer owned the shares of stock.

There is no doubt that Dirksmeyer and Feagans had an understanding that the latter was to share in the profits if the business prospered, but this understanding had not been reduced to writing and it is doubtful if even the exact terms had been orally agreed to. Dirksmeyer denies there was any such agreement with Feagans. The time came when relations became strained between Dirksmeyer and Feagans and it was then that Feagans claimed ownership of the business by reason of having possession of the duplicate certificate of stock or, in any event, claimed a proprietary interest in the corporation.

A suit was instituted by Dirksmeyer, in which Feagans, the corporation, and its secretary were named as defendants, to compel the surrender of the duplicate certificate of stock and the entry on the records of the corporation of Dirksmeyer's ownership of the 997 shares. The corporation's bank account was tied up so neither Dirksmeyer nor Feagans could draw on it. At this stage of the controversy and before the suit was brought to trial, counsel for the respective parties set about to negotiate a settlement. We have set forth in our Findings of Fact the important terms of the agreement of settlement which was drawn by counsel for the corporation and Dirksmeyer. Under the terms of the agreement, Feagans was to receive $19,500 in consideration of his surrender and assignment of the duplicate certificate of stock, and his release of the corporation and Dirksmeyer of all claims against either, including any claim to ownership in the property or any further claim to an interest in the profits. The agreement also contained all the other provisions that are usually found in a comprehensive release under the circumstances here present.

We have found as a fact, and it is clear to us from the entire record, that Feagans never did in fact own any shares of stock in the corporation; had no proprietary interest in the business; and that in reality his claims were for additional compensation. It is equally clear to us that there was an understanding, however informal, that Feagans was to receive a share in the profits if the business proved a success, which it did. There was maneuvering by both parties and the settlement took into consideration the various claims made, whether or not there was any merit in some of them. The figure of $19,500 was reached as a result of dickering between counsel, although the amount paid was very close to one-half of the accumulated earnings and surplus of the company during the period the corporation was operated by Feagans. That the corporation was induced to pay so high a price we think was due not only to a recognition that there was validity to

Feagans' claim for a share of the profits, but also because it was feared that the goodwill of the business and its continued successful operation might be seriously impaired if the bickering between Feagans and Dirksmeyer was continued much longer.

What, then, are the tax consequences of the settlement? Clearly the money received by Feagans was not for the sale of a capital asset and the gain is not a capital gain but ordinary income. The money paid by the corporation was to compensate Feagans for his management of the corporation and to give him additional compensation by way of a share in the profits, which was indicated by an informal agreement between Feagans and Dirksmeyer, and also in some small part to protect its goodwill and business and permit it to resume operations in a normal way. *Catholic News Publishing Co.*, 10 T. C. 73; *Scruggs-Vandervoort-Barney, Inc.*, 7 T. C. 779; cf. also *Welch* v. *Helvering*, 290 U. S. 111 (1933). We think that the sum so paid constitutes an ordinary and necessary expense of the corporation, deductible in the year in which the settlement was reached, and in this case the year in which the money was paid. *Lucas* v. *American Code Co.*, 280 U. S. 445, *International Utilities Corporation*, 1 T. C. 128.

The legal expenses and attorney's fees paid by the corporation to effect the settlement and for his services incident thereto are clearly deductible in the full amount paid of $1,073.20.

We think the $1,700 paid by Feagans for attorney's fee in connection with the settlement constitutes an expense incurred in the collection of income. Feagans, having treated the transaction on his returns as in the nature of a sale of capital assets, deducted the attorney's fee from the amount received before computing his profits. The respondent would deny the deduction on the ground that it was not proven in the testimony that this sum was paid, but we think that the payment of this item was never in issue and there is no merit in respondent's argument in this particular.

There remains the treatment of respondent's contention that the money paid by the corporation to Feagans should be regarded as a dividend or distribution to Dirksmeyer. We think there is no merit in this contention. The stock of the corporation we have found at all times belonged to Dirksmeyer and at no time to Feagans, whose real claim was for additional compensation rather than a claim to ownership of stock. At the conclusion of the settlement, Dirksmeyer continued to own all the shares, but the net worth of the corporation was now $19,500 less than it was before the settlement. Certainly in these circumstances there was no profit or income accruing to Dirksmeyer. Nor is there any merit in respondent's argument that the money which was paid by the corporation was in part for Feagans' release of some Government bonds that were carried in the names of both Feagans and

Dirksmeyer. It appears that the amount of these bonds was only $300; that the bonds belonged to the corporation and not to the individuals who merely held them in trust; and that they continued to appear on the balance sheet of the corporation as its property.

*Decisions will be entered under Rule 50.*