BETH VAN SICKLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Sickle v. Commissioner
Docket No. 3129-83
United States Tax Court
T.C. Memo 1986-538; 1986 Tax Ct. Memo LEXIS 68; 52 T.C.M. (CCH) 982; T.C.M. (RIA) 86538; November 6, 1986. Roderick L. MacKenzie, for the petitioner. Kenneth A. Burns, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax as follows: Addition to Tax
Calendar Year
Deficiency
Sec. 6651(a)(1) [1]
1976
$112,270
$15,937
1977
13,254
3,313
1978
2,007
502
*69 After concessions, the issues that we must decide are: 1.Whether petitioner is required to include in her income for 1976 $200,000 of a settlement in a lawsuit that was paid to her attorneys as a contingency fee. 2. If petitioner is required to include the $200,000 in income for 1976, whether she is entitled to deduct all or part of it as a legal expense for the production of income. 3. Whether petitioner is liable for the addition to tax under section 6651(a)(1) for taxable year 1976. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner was a resident of Fort Bragg, California, when she filed her petition herein. She filed her individual return for 1976 on December 14, 1978. Petitioner married Jack Van Sickle (hereinafter "Jack") on June 3, 1955. Petitioner and Jack separated on or about June 19, 1964, and were granted a divorce by a Nevada court on February 25, 1965. The divorce did not grant petitioner all the assets she felt she was entitled to, and on or about July 23, 1968, she filed an action in the Superior Court of California *70 for Sacramento County (hereinafter the "Sacramento" action) to have the divorce declared invalid and to establish her community property interest in assets then held by Jack. Petitioner retained Anthony J. Scalora to represent her in the Sacramento action. Scalora agreed to a contingency contract under which he would receive 30 percent of all sums in excess of $100,000 that petitioner recovered in the action. Scalora associated with the firm of Evans, Jackson & Kennedy to prosecute the action. Gregory F. Gilbert, then an associate in Evans, Jackson & Kennedy, acted as lead counsel for petitioner. One of the assets in dispute in the Sacramento action was Jack's interest in Crescent V Enterprises, Inc. (hereinafter "Crescent Corp."). Jack owned all 200 shares of Crescent Corp. Jack had transferred to Crescent Corp. on or about May 30, 1962, ownership of 5.044 acres of real property located in South Lake Tahoe, California. The real property had been leased to Lake Tahoe Inn, a California Corporation, and Jack's transfer of his interest in the property shifted to Crescent Corp. the right to receive the rent payments due under the lease. The lease obligated Lake Tahoe Inn to pay *71 a rent of the greater of $2,500 per month, or 7 percent of its annual gross. On January 1, 1966, Lake Tahoe Inn subleased to a group of individuals a portion of the real property subject to the lease from Crescent Corp. The sublease provided a rent of "$1.00 per month per building site." [2] One of the sublessees was Max H. Hoseit. The court hearing the Sacramento action filed its preliminary decision on February 1, 1973, in which it held that petitioner had a community property interest in Crescent Corp. Preliminary negotiations over how the community property would be shared began immediately after the preliminary decision was issued. Based on those negotiations, petitioner believed that she would be awarded 100 percent ownership of Crescent Corp. [3]
On or about May 16, 1973, Crescent Corp., Jack, and a related corporation filed an action in the California Superior Court for El Dorado County (hereinafter the "Lake Tahoe" action) against *72 Lake Tahoe Inn and its sublessees. The complaint alleged primarily that Lake Tahoe Inn and the sublessees had executed the sublease in an attempt to reduce Lake Tahoe Inn's gross receipts from the leased property and thereby reduce the rent payable by Lake Tahoe Inn to Crescent Corp.The complaint primarily sought to recover rent allegedly due to Crescent Corp. As petitioner was convinced that she would receive Crescent Corp. in the Sacramento action, she became concerned that the Lake Tahoe action was between parties who were actually on friendly terms. Hoseit, one of the defendants, had been Jack's chief witness against her in the Sacramento action. She feared that the action was brought to create a res judicata effect and prevent Crescent Corp. from obtaining in subsequent actions amounts she suspected it was due under the lease. To ensure that the action was prosecuted vigorously, she retained Gilbert to intervene in the action on her behalf. Gilbert felt that the preliminary decision issued in the Sacramento action gave him grounds to insist on taking an active role in the prosecution of the Lake Tahoe action. Petitioner agreed that Gilbert would receive 35 percent of whatever *73 Crescent Corp. recovered in the Lake Tahoe action in exchange for taking over the action, advancing costs, and taking it through trial and appeals. Gilbert was actively involved in the Lake Tahoe action by July 1973. His strategy was to attempt to establish that the income of the Lake Tahoe Inn was higher than indicated by the rents being paid to Crescent Corp. To establish the income of Lake Tahoe Inn, he traveled to South Lake Tahoe and spent two and one-half weeks there doing investigative work aimed at estimating the inn's revenues and expenses. While there, he counted buses, conducted interviews, and investigated the inn's maids, linen usage, bed tax remittances, and utility and water bills. When he returned he reported his findings to his firm's partners, held several meetings with the parties to the action, and investigated the resources of his opponents. In all he personally devoted more than 200 hours to the case over a three-year period. On or about December 13, 1976, Jack transferred his shares of Crescent Corp. into a trust. Crescent Corp. was then liquidated. The trust held that lease to Lake Tahoe Inn after the liquidation. The trust had a stated term of *74 ten years, but it could be terminated earlier by the agreement of petitioner and Jack, or by order of the court hearing the Sacramento action. The trust's net income was to be accumulated, but it could be distributed by agreement of petitioner and Jack, or by order of the court hearing the Sacramento action. In fact, petitioner was able to withdraw income from the trust at will provided she allowed Jack to receive an equal distribution. When the trust terminated, its assets, including any undistributed income, were to be distributed as agreed by petitioner and Jack, or if they did not agree, as ordered by the court hearing the Sacramento action. The trust was administered by two apparently independent trustees. The terms of the trust required the trustees to obtain the prior approval of both petitioner and Jack, or of the court hearing the Sacramento action, before exercising the following powers: to sell, convey, exchange, convert, improve, repair, manage and control [the trust's property]; or to lease for terms within or beyond the terms of the trust and for any purpose; to borrow money * * *; to encumber or hypothecate * * *; to carry insurance; to compromise or otherwise *75 adjust any claims in favor of or against the trust; [and] to commence or defend such litigation with respect to the trust or any property of the trust estate as it may deem advisable. * * * The trust had a December 31 year end for tax accounting purposes. The Lake Tahoe action was settled on December 28, 1976. Under the terms of the settlement, the defendants agreed to pay $575,685.66.The defendants paid $550,000 of the settlement directly to the trust. The trust received the $550,000 by December 30, 1976. Petitioner authorized the trustees to pay on her behalf $200,000 of the settlement directly to the attorneys who represented her in the Lake Tahoe action. [4] The trust made the payment to the attorneys on December 30, 1976. The $200,000 was received by Gilbert's firm and was divided by the firm among Scalora, who received $100,000, and the three name partners of Gilbert's firm, who each received $33,333. The decision of the California court in the Sacramento action was affirmed by a California appellate court in an unpublished opinion and became final when the United States *76 Supreme Court denied a writ of certiorari on June 14, 1982. Van Sickle v. Van Sickle,457 U.S. 1119 (1982). The fees due from the Sacramento action, which were received beginning in 1983, were shared by Scalora, Gilbert, and Kennedy (one of Gilbert's partners). Respondent audited petitioner's 1976, 1977, and 1978 returns and determined that petitioner received in 1976 $275,000 of income from the settlement of the Lake Tahoe action. [5] Respondent allowed $748 of related 1976 trust expenses that petitioner had failed to claim. Respondent determined that petitioner was liable for an addition to tax under section 6651(a)(1) for filing late her return for taxable year 1976. The parties stipulated that petitioner is not entitled to a deduction for trust expenses if she is not required to include income from the trust. Petitioner conceded at trial that $75,000 of the $275,000 was gross income to her in 1976. OPINION Petitioner properly concedes on brief that the $200,000 distributed from the trust would have been ordinary income *77 to her had she received it, as it was derived from an action for rents. Petitioner argues, however, that the $200,000 was not income to her as she never received it. Petitioner points out that she had agreed to pay the amount to her attorneys, and that they received the amount directly from the trust rather than from her. Petitioner's argument ignores the doctrine of assignment of income. We have found that the trustees paid the $200,000 to petitioner's attorneys after she directed them to do so. By directing the trust to pay the $200,000 to her attorneys, petitioner enjoyed the use of the payment just as much as if she had collected it herself before paying it to them. Harrison v. Schaffner,312 U.S. 579, 580, 582 (1941); Whitehead v. Commissioner,148 F.2d 718, 721 (4th Cir. 1945), affg. a Memorandum Opinion of this Court. Cf. Commissioner v. P.G. Lake,Inc.,356 U.S. 260, 267 (1958); Helvering v. Horst,311 U.S. 112, 117 (1940). Her exercise of her power to have the income paid to her attorneys "is the enjoyment, and hence the realization, of the income." Helvering v. Horst,supra at 118. *78 [6]
We hold that petitioner had the ability to obtain distribution of one-half of the trust's income, that she exercised that ability to have $200,000 paid by the trust to her attorneys to satisfy her legal obligation to them, and that the $200,000 represents gross income to her in 1976. Deductibility of $200,000
Having decided that the $200,000 is income to petitioner, we must address petitioner's contention that the $200,000 is deductible under section 212. Section 212 provides in relevant part: In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; [or] (2) for the management, conservation, or maintenance of property held for the production of income; * * * Section 1.212-1(d), *79 Income Tax Regs., provides that expenses otherwise deductible under section 212 "must be reasonable in amount * * *." Respondent concedes on brief that reasonable attorney's fees paid in an action such as the Lake Tahoe action are deductible under section 212. Commissioner v. Doering,335 F.2d 738, 740 (2d Cir. 1964), affg. 39 T.C. 647 (1963); Feagans v. Commissioner,23 T.C. 208, 217 (1954). Respondent contends, however, that the $200,000 in this case are either: (1) Not deductible as they were paid for services rendered in the Sacramento action, which was primarily for the division of property; or (2) only partially deductible, as even if the money was paid on account of the Lake Tahoe action, it represented an unreasonable payment for the work performed. Taxpayers are allowed deductions from income only to the extent provided by the legislature. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Petitioner must qualify under the specific rules and regulations imposed by Congress in order to be allowed deductions for the expenses of producing income. Deputy v. du Pont,308 U.S. 488, 493 (1940). *80 Respondent's notice of deficiency is presumed correct, and the burden of proving it incorrect rests on petitioner. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). At trial, both petitioner and her attorney, Gilbert, testified that petitioner had retained him to intervene in the Lake Tahoe action and had agreed to pay him 35 percent of the total recovered. Their testimony was credible, and we believe it is trustworthy. Gilbert testified at length concerning the circumstances surrounding the agreement. He explained that petitioner believed she was going to obtain Crescent Corp., and feared that its assets were being compromised by a friendly suit that would have a res judicata effect on subsequent actions. He stressed that the agreement was entirely separate from the Sacramento action, and that the $200,000 payment was not credited against the fees due from the Sacramento action. Petitioner's testimony corroborated his. We hold that the $200,000 was paid to satisfy petitioner's obligation to pay her attorneys for representing her in the Lake Tahoe action, and that none of the $200,000 was paid for services rendered in the Sacramento action. We *81 next address respondent's contention that only a portion of the $200,000 is deductible by petitioner as it allegedly represents an unreasonable payment for the services performed. We note at the outset that the fee was entirely contingent, and was to be petitioner's attorneys' sole remuneration for intervening in and prosecuting the Lake Tahoe action. A wide range in the fees recovered by attorneys is to be expected under contingency fee arrangements. The possibility of generous recoveries under such arrangements encourages attorneys to represent clients who would otherwise be unable to retain their services, and thereby affords those clients access to the legal system. Attorneys expect good fee recoveries from a few cases taken under a contingency fee arrangement to offset poor or no recoveries from others. Petitioner's lead attorney Gilbert testified at trial as to the substantial amount of work his firm performed on the Lake Tahoe action. As we set forth more fully in the findings of fact, he personally devoted over 200 hours to the case. His work included a two and one-half week trip to South Lake Tahoe, the significant out-of-pocket costs of which were advanced by his *82 firm. He had no assurance that his investment in the case would not increase further as he had no way of knowing how protracted the litigation would become. The attorneys had no assurance that they would recover for their time and expenses, as they could not be certain of how large a recovery, if any, would be made, or when it would occur. In these circumstances, we cannot hold that the $200,000 fee recovered by petitioner's attorneys was unreasonable compensation for the services they performed and the risks and obligations they assumed. [7] We hold that the entire fee was paid on the Lake Tahoe action, and that it qualifies for deduction under section 212. *83 Section 6651(a)(1)
In his statutory notice respondent determined that petitioner was liable for the addition to tax provided by section 6651(a)(1) for failure to file a timely income tax return for 1976. Petitioner has the burden of proving that respondent's determination is erroneous. BJR Corp. v. Commissioner,67 T.C. 111, 131 (1976); Rule 142(a). Petitioner offered no evidence to show that her failure to file a timely return was due to reasonable cause and not due to willful neglect. We therefore sustain respondent's determination that petitioner is liable for the addition to tax provided by section 6651(a)(1). To reflect the foregoing, Decision will beentered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The record does not disclose the number of building sites located on the subleased property.↩
3. Petitioner received the leased property held by Crescent Corp. in the property settlement that eventually occurred on October 31, 1985.↩
4. The $200,000 payment was slightly less than 35 percent of the $575,685.66 settlement.↩
5. Computed as one-half of the settlement payment of $550,000. Petitioner reported no income or expense from the trust for 1976.↩
6. It has been repeatedly held that a taxpayer realizes income when she directs that amounts that would represent income to her be paid directly to her creditors to satisfy an obligation owed by her. See, e.g., Douglas v. Willcuts,296 U.S. 1, 9 (1935); Fouche v. Commissioner,6 T.C. 462, 469-470↩ (1946).
7. As matters turned out, of course, petitioner's counsel were very well compensated indeed. With the settlement of the Lake Tahoe action some seven months after it began, for over $575,000, counsel's contingent fee arrangement produced $200,000, or about $1,000 per hour for the time spent on the case by Gilbert. It would be unfair, however, to apply hindsight to this result and hold that under the instant circumstances the fee was excessive and unreasonable, and thus should be disallowed as a tax deduction. All contingent fee agreements are a gamble, from the lawyer's standpoint. The instant case was a gamble which counsel won; it could well have turned out otherwise. Whether the division of the $200,000 fee, by paying half of it to Scalora, was a proper division based upon the value of Scalora's participation in the case, or whether it represented the demand for and payment of a forwarding fee without the rendition of any significant services, which could be criticized, see Cal. Rules of Professional Conduct Rule 2-108, are matters which are not before us, and we express no opinion on them. We hold only that the contingent fee agreement in the Lake Tahoe action was reasonable when entered into.↩